Angel ORTEGA–ROSARIO,
Plaintiff, Appellant,

v.

Francisco ALVARADO–ORTIZ, et al.,
Defendants, Appellees.

No. 90–1133.

United States Court of Appeals,
First Circuit.

Heard June 8, 1990.

Decided Oct. 23, 1990.

Jorge L. Ruiz Rivera, for plaintiff, appellant.

Anabelle Rodriguez–Rodriguez with whom Jorge E. Perez–Diaz, Sol. Gen., and Vannessa Ramirez, Asst. Sol. Gen., were on brief for defendants, appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

TORRES, District Judge.

Angel Ortega–Rosario (Ortega) brought this action pursuant to 42 U.S.C. § 1983 alleging that his Fourteenth Amendment right to procedural due process was violated when his employment was terminated without a hearing. The district court determined that Ortega had not been deprived of any liberty or property interest cognizable by the Fourteenth Amendment and, therefore, granted summary judgment in favor of the defendants. Ortega has appealed from that determination. We affirm the district court's judgment.

## I. FACTS

In August of 1987, Ortega was working for the Commonwealth of Puerto Rico as a driver in the "Corps of Volunteers," a division of the Governor's Office. He was classified as an "irregular employee" which meant that, under Puerto Rico law, he was subject to termination at any time that his services were no longer required.

On August 7, video equipment was stolen from a government warehouse to which Ortega had been assigned. After discussing the incident with the warehouse employees, defendant Rodriguez, the warehouse supervisor, apparently concluded that Ortega had been involved in the theft. Consequently, Rodriguez arranged to have Ortega and another warehouse employee transferred to a different department. That transfer was approved by defendant Alvarado in his capacity as Director of General Services. Notice of the transfer was provided to the appropriate personnel administrator in the form of a memorandum from Rodriguez that expressed a lack of trust in Ortega as a result of the thefts. The parties have stipulated that a copy of the memorandum was inserted in Ortega's personnel file but that the document was not otherwise published.

On August 26, Ortega was notified that his employment was being terminated effective August 29. No explanation was given for that action, and no hearing was conducted regarding the basis for the termination. There is nothing in the record indicating that Ortega requested a hearing, but during the course of oral argument, his counsel asserted that a verbal request was made.

Within two weeks after his termination, Ortega applied for and began receiving unemployment compensation benefits. Approximately one month later, he began looking for a job. The exact nature of those efforts and when they were made is not clear. Ortega's counsel asserts that employment applications listing the Corps of Volunteers as a reference were filed with three companies and that there was no response to any of those applications. At any rate, in October of 1988, Ortega did obtain employment as the supervisor of a warehouse at the Capitol Building Police Station. After two months, he left that job for a position at Avis Auto Rental where he continued working until January of 1989. No explanation has been offered as to why his employment at Avis ceased.

In May of 1989, the defendants apprehended the individuals responsible for the August 7, 1987, theft and determined that Ortega was not implicated. Accordingly, the Commonwealth rehired Ortega as a warehouse chief, a more advanced position than that which he previously held.

In bringing this action, Ortega contends that his initial discharge deprived him of both liberty and property, and therefore, procedural due process required that he be afforded a pretermination hearing. Consequently, he seeks compensatory and punitive damages for defamation, lost earnings and mental anguish that he says caused him to attempt suicide and ruined his relationship with a woman with whom he lived. As previously noted, the district court concluded that no hearing was required because Ortega had not been deprived of any liberty or property interest cognizable by the Fourteenth Amendment.

* Of the District of Rhode Island, sitting by designation.

## II. DISCUSSION

### A. The Summary Judgment Standard

In reviewing the district court's determination, we must bear in mind that summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Because a district court is in no better position to assess the record, our review in summary judgment cases is plenary. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). Like the district court, we must view the record in the light most favorable to the party against whom a motion for summary judgment is directed, and we must give that party the benefit of all reasonable inferences to be drawn in its favor. *Mack v. Great Atlantic and Pacific Tea Co. Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

However, the mere assertion that there is *some* fact in dispute is insufficient to defeat a motion for summary judgment. The fact in question must be *material,* and the dispute must be *genuine.* A fact is deemed material if, under applicable substantive law, it may affect the outcome of the case. Furthermore, a dispute is considered genuine only if there is conflicting evidence that requires a trial to resolve the disagreement. Unsupported allegations are insufficient to create a genuine dispute. Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894–95 (1st Cir.1988).

### B. The Property Interest Claim

■ The Due Process Clause of the Fourteenth Amendment prevents a state from discharging a public employee who has a property interest in continued employment unless the employee is afforded an opportunity for a hearing regarding the sufficiency of the reasons for his termination. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (citing *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972)); *see also Ruiz–Roche v. Lausell,* 848 F.2d 5, 7 (1st Cir.1988). Whether an employee has such a property interest is a matter that must be determined in accordance with applicable principles of state law. *Loudermill,* 470 U.S. at 538, 105 S.Ct. 1491. In order to establish the existence of a property interest, the employee must demonstrate that he has a legally recognized expectation that he will retain his position. *See Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). Such an expectation may derive from a statutory job classification, a provision in the contract of employment (express or implied) or an officially sanctioned rule of the workplace. *Id.* at 601–02, 92 S.Ct. at 2699–2700; *Cheveras–Pacheco v. Rivera–Gonzalez,* 809 F.2d 125, 127 (1st Cir.1987). A mere subjective expectancy of continued employment is not sufficient. *Cheveras–Pacheco,* 809 F.2d at 127.

■ In this case, it is clear that Ortega had no right to continued employment. He does not even allege the existence of any contractual provision or officially sanctioned rule of the workplace that would have entitled him to retain his former position. Rather, he relies exclusively on his job classification, which he originally characterized as that of a "career" employee but now concedes was that of an "irregular" employee. However, under Puerto Rico law, an irregular employee may be terminated whenever his services are no longer required, and only a career employee (who is subject to dismissal only for good cause) has a property interest in continued employment. *See* P.R. Laws Ann. tit. 3, §§ 711 and 1336(4) (1978); *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir.1988); *Kercado–Meléndez v. Aponte–Roque,* 829 F.2d 255, 262 (1st Cir.1987). Therefore, the district court was correct in determining that Ortega was

not deprived of any property interest cognizable by the Fourteenth Amendment.

## C. The Liberty Interest Claim

Ortega contends that, even if he had no property interest in continued employment, the stigma surrounding his termination foreclosed his opportunity to obtain other employment, thereby depriving him of a liberty interest and triggering the procedural due process requirements of the Fourteenth Amendment. The Supreme Court has defined the liberty interest protected by the Fourteenth Amendment to include not only freedom from bodily restraint but also "the right of the individual ... to engage in any of the common occupations of life...." *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972) (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). Accordingly, it has recognized that there may be circumstances in which a state's decision not to retain an untenured employee or to discharge an employee who is terminable at will may damage the employee's reputation to such an extent that his "liberty" to seek another job is significantly impaired. *See Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707.

■ However, the Court has made it clear that neither the termination of employment nor statements that might be characterized as defamatory are, by themselves, sufficient to implicate the liberty interest. Thus, a state need not conduct a hearing before refusing to hire a nontenured employee when there are no charges that might seriously damage the employee's reputation because

> [i]t stretches the concept too far to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.

*Roth,* 408 U.S. at 575, 92 S.Ct. at 2708.

■ Similarly, while defamatory statements made by a public official may be actionable under state law, they do not implicate an individual's "liberty" interest unless they are uttered in connection with the alteration or extinguishment of some more tangible interest (e.g. employment) that is initially recognized and protected by state law. *Paul v. Davis,* 424 U.S. 693, 701, 708–09, 96 S.Ct. 1155, 1160, 1164, 47 L.Ed.2d 405 (1976). Even when a false and defamatory reason is cited for discharging a public employee, the employee is not deprived of "liberty" unless that reason is communicated to others, because otherwise, "it cannot properly form the basis for a claim that [the employee's] interest in his 'good name, reputation, honor, or integrity' was thereby impaired." *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079 (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)).

In short, where an employee lacks a property interest in his employment, the due process requirement that he be afforded a hearing at which he may seek to clear his name is triggered only if the dismissal is based upon false and defamatory charges that are disseminated by the employer and stigmatize the employee so that the employee's freedom to obtain alternative employment is significantly impaired. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir. 1989).

■ In this case, the defendants did not disseminate the statements in question. The parties stipulated that, while the Rodriguez memorandum was placed in Ortega's personnel file, it was not otherwise publicized. Ortega contends that the absence of a response to any of his three employment applications listing the Corps of Volunteers as a reference warrants an inference that the contents of the memorandum were disclosed to those prospective employers. However, such an inference would be contrary to the aforesaid stipulation. Moreover, it would be pure speculation to attribute the lack of interest displayed by the companies in question to any information contained in Ortega's personnel file. Ortega has presented no evidence to support a conclusion that any of the prospective employers requested, or that the defendants

divulged, information regarding the circumstances surrounding his termination. Consequently, there is no basis for inferring that the statements contained in his personnel file impaired his freedom to seek alternative employment. If anything, the fact that Ortega was able to obtain two other jobs, one of which was with the Commonwealth of Puerto Rico, suggests otherwise.

## III. CONCLUSION

For the foregoing reasons, we conclude that the district court was correct in determining that Ortega was not deprived of any property or liberty interest cognizable by the Fourteenth Amendment, and therefore, he was not entitled to a pretermination hearing. Accordingly, the judgment of the district court is *AFFIRMED*, and costs are awarded to appellees.