**BATH IRON WORKS CORPORATION and Commercial Union Insurance Companies, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 91–1476.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1991.

Decided Nov. 27, 1991.

Allan M. Muir with whom Kevin M. Gillis and Richardson & Troubh, Portland, Me., were on brief for petitioners.

Karen B. Kracov, Atty., U.S. Dept. of Labor, with whom David S. Fortney, Deputy Sol. of Labor, Carol A. De Deo, Associate Sol. for Employee Benefits, and Janet R. Dunlop, Washington, D.C., Counsel for Longshore, were on brief for respondent.

Before CAMPBELL, Circuit Judge, and BROWN,* and BOWNES, Senior Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

The question in this case is whether in a claim for death benefits the Employer (Bath Iron Works Corporation) and its Carrier (Commercial Union Insurance Companies) were erroneously denied by the Benefits Review Board the benefit of the § 8(f) second injury fund because the Employer–Carrier failed to submit to the deputy commissioner their request for apportionment of liability to the special fund prior to the consideration of the death benefits claim by the deputy commissioner. We affirm.

### Death of a Longshoreman

Clyde J. Bailey [1] died August 9, 1986. A claim for disability and death benefits caused by asbestosis was filed pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA).

Employer-Carrier, after the ALJ hearing on the widow's claim,[2] filed a post-hearing request for § 8(f) relief on the death claim. Opposing this, the Director, Office of Workers' Compensation Programs, invoked the § 8(f)(3) absolute defense to the special fund's liability.

### When To File For Section 8(f) Relief

Section 8(f)(3) of the LHWCA mandates not only when an application for § 8(f) relief must be filed by an employer, but affords an absolute defense to § 8(f) liability. Section 8(f)(3) provides:

> Any request ... for apportionment of liability to the special fund ... for the payment of compensation benefits, and a statement of the grounds therefore, shall be presented to the deputy commissioner prior to the consideration of the claim by the deputy commissioner. Failure to present such request prior to such consideration shall be an absolute defense to the special fund's liability for the payment of any benefits in connection with such claim, unless the employer could not have reasonably anticipated the liability of the special fund prior to the issuance of a compensation order.

33 U.S.C. § 908(f)(3) (1986).[3] The ALJ held that the absolute defense precluded Employer–Carrier's relief from the special fund. The ALJ, literally parroting the statute, stated that § 8(f)(3) mandated that § 8(f) applications be filed early on with the deputy commissioner's office. This left the question whether Employer–Carrier could successfully urge that they could not earlier have reasonably anticipated the liability of the second injury fund.

### What is Section 8(f)?

Popularly known as the second injury fund, § 8(f) [4] limits an employer's liability

---

\* Of the Fifth Circuit, sitting by designation.

1. Bailey worked primarily as a pipecoverer for Bath from May 12, 1947 until January 31, 1984, at which time he took early retirement. During the entire course of his employment, Bailey was regularly exposed to asbestos.

2. In addition to the claim for death benefits, a claim was also made for permanent *total* disability from the date of the decedent's retirement from Bath. Alternatively, Claimant asked for benefits for permanent *partial* disability compensation from August 9, 1985, the first date on which her husband was found to be suffering from permanent respiratory impairment, until his death, August 9, 1986. After a formal ALJ hearing, Employer-Carrier was ordered to pay Claimant compensation for 35% permanent partial impairment from August 9, 1985 through August 8, 1986 and death benefits from August 9, 1986 (italics added).

3. The language in § 8(f)(3) is tracked by that of its implementing regulation 20 C.F.R. § 702.321 which provides:
   Neither the date selected for submission of the fully documented application nor any extension therefrom can go beyond the date the case is referred to the OALJ for formal hearing. 20 C.F.R. § 702.321(b)(2).
   [F]ailure to submit a fully documented application by the date established by the district director shall be an absolute defense to the liability of the special fund.... The failure of an employer to present a timely and fully documented application for section 8(f) relief may be excused only where the employer could not have reasonably anticipated the liability of the special fund prior to the consideration of the claim by the district director. 20 C.F.R. § 702.-321(b)(3).

4. The fund is established under § 44. It is made up from contributions from carriers and

when an employee who is partially disabled subsequently injures himself or dies, and the preexisting condition contributes to a greater level of permanent disability or is a contributing cause of death. *See* 33 U.S.C. § 908(f); *General Dynamics Corp. v. Sacchetti*, 681 F.2d 37, 39–40 (1st Cir.1982). It does two things. First, it limits to 104–weeks liability for compensation/death benefits. Second, a special fund is established to pay out the remaining benefits owed. *See C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503, 510 (D.C.Cir.1977).

The purpose behind § 8(f) was to alleviate potential employment discrimination against disabled employees. *Lawson v. Suwanee Fruit & S.S. Co.*, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). By it, Congress aimed to "encourage employers to hire or continue to employ handicapped workers by ensuring that the employer would not have to compensate in full for a subsequently incurred permanent partial disability when that disability was attributable in part to a previously existing handicap." [5] *Sacchetti*, 681 F.2d at 40. Section 8(f) distributes among all employers subject to the LHWCA much of the cost of compensating the employee having a preexisting disability.[6] *See* 33 U.S.C. § 944 (1986).

*How Do We Decide?*

33 U.S.C. § 921(c) provides the jurisdictional grant for court appellate review. Our review of this case requires that we independently examine the record to determine whether substantial evidence supports the ALJ's findings, and we must verify the legal correctness of the Benefits Review Board's conclusions. *CNA Ins. Co. v. Legrow*, 935 F.2d 430, 433–434 (1st Cir. 1991). This is a pure question of law whereby we make certain that the Board adhered to the substantial evidence standard in its review of the ALJ's factual findings. *Id.*

*Asbestosis Reasonably Anticipated*

Employer-Carrier argue that the ALJ and the Benefits Review Board erred in refusing to consider and grant its post-hearing application for relief.[7] Acknowledging that they had not timely filed their application for § 8(f) relief, Employer–Carrier invoke the escape clause that they could not have reasonably anticipated the liability of the special fund at the time of the informal conference before the deputy commissioner. In support, they contend that evidence essential to their application

---

self-insured employers; the amount of each contribution is determined by the Secretary of Labor who annually estimates (i) the probable expenses of the fund for each calendar year and (ii) the amount of payments required from carriers and employers to maintain adequate reserves in the fund. 33 U.S.C. § 944(c)(2) (1986). These assessments are "levied at a uniform rate [ ] on all employers subject to the [LHWCA], on the basis of a percentage of their workers' compensation premiums or self-insured compensation costs." H.R.Rep. No. 570 (pt. 1), 98th Cong., 2d Sess. 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2753.

**5.** Indeed, prior to the enactment of § 8(f) as part of the LHWCA in 1927, employers, to avoid responsibility for full compensation to an employee who already had a partial disability, simply fired the employee as soon as he became disabled or refused to hire an employee with an existing partial disability. *Lawson*, 336 U.S. at 203–204, 69 S.Ct. at 505–506.

**6.** "[U]nder the current law, the employer pays only the first two years of compensation benefits[.] The obligation to pay compensation benefits thereafter is *shifted to the special fund*

which pays all further compensation benefits except for medical benefits." H.R.Rep. No. 570 (pt. 1), 98th Cong., 2d Sess. 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2753.

**7.** The October 22, 1987 affidavit of Assistant Deputy Commissioner Francis R. Mahoney reflects that Employer–Carrier raised the § 8(f) issue at the informal conference held on April 4, 1987, and were given 40 days to submit a completed application. In a letter dated July 14, 1987, the deputy commissioner's office informed Employer–Carrier that their § 8(f) application had not been received. Employer–Carrier was given 15 more days to submit their application. Additionally, Employer–Carrier was reminded that failure to submit the application would "invoke the absolute defense to the special fund's liability for the payment of benefits in connection with this claim." The case was referred to the OALJ on August 5, 1987. The hearing on the widow's claim was held before the ALJ on March 23, 1988. Employer–Carrier submitted their § 8(f) application thereafter. The application was denied by the ALJ on March 21, 1989, and disability and death benefits were awarded.

was unavailable until after the hearing.[8] Employer–Carrier, contending that the evidence indispensable to their § 8(f) application was the deposition testimony of Dr. Leck, in which Dr. Leck identified a causal connection between Bailey's work and his death, offered no explanation for not having obtained the benefit of his professional views which, attested by the subsequent deposition,[9] provided dispositive evidence to support filing a § 8(f) application. More importantly, Employer–Carrier possessed other information earlier which in the factual assessment of the ALJ and the Benefits Review Board enabled them to "reasonably anticipate" the liability of the special fund.[10]

Employer, from the medical records of its own hospital, knew decedent's pre-existing lung impairment, as documented by the October 16, 1979 x-ray, contributed to his death. Bailey's chest x-rays taken at Employer's Hospital on October 16, 1979 showed "mild cardiomegaly", but more significantly, "pulminary fibrosis and pleural change apparently representing asbestosis." Additionally, the Employer's medical records showed that, together with high blood pressure, asbestosis first documented in x-rays on October 16, 1979, was later confirmed in x-rays in 1980, 1981 and 1983.[11] Finally, Employer possessed the decedent's autopsy report,[12] and claimant's claim for benefits, both of which cite asbestosis as a contributing cause of death.

These various medical record reports, which were available to Employer–Carrier, charged each with knowledge of their contents well before the deputy commissioner's informal conference. Unless the law tolerates a "see no evil, speak no evil, hear no evil" approach, the ALJ and the Benefits Review Board, in assessing the medical worth of this wealth of information, could factually conclude that Employer–Carrier could have reasonably anticipated the probable liability of the special fund. The legal conclusion to the same effect, if not compelled, is likewise correct.

*A Post-logue*

Employer-Carrier, in annotation, argue that had they applied for § 8(f) relief earlier, their application would have been rejected for lack of evidence indicating a pre-

---

8. Defending his refusal to file a timely § 8(f) application before the deputy commissioner, Employer–Carrier's counsel explained: "We reserved [the right] to raise it at a later date. At the time of the informal conference, no medical information had been submitted that would have established at all that the employee's condition was work related. We obviously had no evidence of a connection between a work related condition and some pre-existing condition at that time. I indicated, however, that discovery was not yet complete and that we wanted to reserve the right to raise it at a later time if subsequently developing medical information supported it."

9. Claimant indicated in her Interrogatory Answers that she intended to call Dr. Leck as an expert witness. Claimant added that Dr. Leck would testify to "exposure to asbestos" and "pleural placquing of lungs." The ALJ hearing was held on March 23, 1988, at which time all parties were given the opportunity to present evidence and oral arguments. Dr. Leck's deposition was taken one month later on April 22, 1988, and was submitted by Carrier in support of its post-hearing application for § 8(f) relief on March 1, 1989.

10. An employer need only "reasonably anticipate" the liability of the special fund to justify the filing of a § 8(f) application. Through its 1984 amendments to § 8(f), Congress intended that employers' "petitions for special fund relief be filed as soon in the claim adjudication process as possible[.]" H.R.Rep. No. 570 (pt. 1), 98th Cong., 2d Sess. 21 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2734, 2754. Congress intended by these amendments "to encourage employers to raise the special fund issue early in the claims adjudication process, in order to assure the deputy commissioner and the Director of OWCP the opportunity to examine the validity of an employer's basis for seeking special fund relief." H.R.Conf.Rep. No. 1027, 98th Cong., 2d Sess. 31 (1984) *reprinted in* 1984 U.S.C.C.A.N. 2771, 2781.

11. The 1979 diagnosis was supported by subsequent medical examinations in 1980, 1981, and 1983. As late as August 9, 1985, just a year before his death on August 9, 1986, Bailey was described as suffering from a permanent respiratory impairment by Dr. Paul J. Balzer.

12. The autopsy report showed the immediate cause of death as cardiorespiratory arrest due to a probable myocardial infarction, but also identified "suspected asbestosis" as "other significant conditions contributing to death."

**60**

existing permanent disability.[13] Rather than file what they—with complete indifference to all they knew from their own existing medical reports—now pessimistically characterize as a "sure-loser," Employer–Carrier decided to wait until they had amassed irrefutable evidence to bind the special fund. The unfortunate consequence of having waited so long to file, however, is that, in the Congressional eyes, Employer–Carrier waived their right to § 8(f) relief.[14] At a minimum, if Employer–Carrier believed that they possessed insufficient evidence to meet the requirements for a fully documented application as described in 20 C.F.R. § 702.321, they should have simply requested additional time in which to develop the required evidence as provided in 20 C.F.R. § 702.321(b)(2).[15] Employer–Carrier's assertion that they "reserved the right" to apply for relief at a later time is insufficient. It is in the discretion of the deputy commissioner whether to allow extensions of time to file for § 8(f) relief. 20 C.F.R. § 702.321(b)(2). Instead of repeatedly condemning their chances before the deputy commissioner, Employer–Carrier could have simply filed their § 8(f) application with what evidence they had and hoped for the best. Had the application been denied by the deputy commissioner, the application would have then been considered by the ALJ. 20 C.F.R. § 702.321(c). This "appellate review" of the application by the ALJ would have afforded Employer–Carrier an opportunity to bring forward any other evidence in support of their application that they lacked before the deputy commissioner. Additionally, even if their § 8(f) application had been denied outright, Employer–Carrier

might have included the deposition of Dr. Leck "on the ground of a change in conditions or because of a mistake in a determination of fact." 33 U.S.C. § 922 (1988); *Washington Society for the Blind v. Allison*, 919 F.2d 763, 768–769 (D.C.Cir.1990). In the face of a total failure to ask for such relief, there is no basis for our determining abuse of discretion in denying something never sought.[16]

The Board of Review was correct.

AFFIRMED.

---

**13.** Also, Employer–Carrier suggest that they faced an unfair "catch-22" situation: Namely, a request for § 8(f) relief before the deputy commissioner would have been inappropriate because the request would have contradicted their position that decedent's death was not work-related. Not so. Requesting § 8(f) relief and disputing the claim outright indeed is inconsistent. "Inconsistent and alternative claims or defenses, however, are a well-accepted feature of modern practice." *Verderane v. Jacksonville Shipyards, Inc.,* 772 F.2d 775, 779 (11th Cir. 1985).

**14.** To be sure, a 1984 amendment to § 8(f) expressly mandates that requests for § 8(f) relief be made initially by application to the deputy commissioner. 33 U.S.C. § 908(f)(3).

**15.** "At the request of the employer or insurance carrier, and for good cause, the district director at his/her discretion, may grant an extension of the date for submission of the fully documented application." 20 C.F.R. § 702.321(b)(2).

**16.** In fact, the deputy commissioner generously granted two extensions to Employer–Carrier to file their § 8(f) application: Both extensions were ignored.