**650**

Robert B. REICH, Secretary of Labor
of the United States, Plaintiff,

v.

BATH IRON WORKS CORPORATION,
Defendant.

Civ. No. 92–325–P–C.

United States District Court,
D. Maine.

Nov. 10, 1993.

David R. Collins, Asst. U.S. Atty., Portland, ME, Michael S. Hertzig, Carol A. De Deo, Joshua T. Gillelan, II, Mark Reinhalter, Office of the Sol., U.S. Dept. of Labor, Washington, DC, for plaintiff.

Mark L. Haley, Conley, Haley, O'Neil & Kaplan, Bath, ME, Robert H. Koehler, Judith Bartnoff, Patton, Boggs & Blow, Washington, DC, for defendant BIW.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 24)

GENE CARTER, Chief Judge.

This case is brought under the Longshore and Harbor Workers' Compensation Act (hereinafter "LHWCA" or "Act"), 33 U.S.C. §§ 901–50. Plaintiff asserts in this action that Defendant Bath Iron Works Corporation (hereinafter "BIW"), which acts as a self-insurer in regard to compensation under the LHWCA, has in its annual required reports understated its workers' compensation payments made under the Act insofar as it has failed to include in those reports payments which BIW characterizes as having been made solely under state workers' compensation law. Complaint, ¶¶ 6–8. Plaintiff asserts that, consequently, BIW has not paid the full amount of its liabilities for annual contributions to the "special fund" provided for by the Act. Complaint, ¶ 9.

BIW's position is that because it files a notice of controversion pursuant to section 914(c) of the Act whenever it makes any payment *under Maine's Workers' Compensation Act,* it has made no "payments under the LHWCA." BIW further maintains that, in any event, payments which it makes pursuant to the state Act are never payments made "under" the LHWCA as required by the Act for the purpose of "special fund" assessment. Defendant's Opposition and Reply Memorandum at 3, 7 (Docket No. 12). The matter came before this Court on Plaintiff's Motion for Partial Summary Judgment

(Docket No. 15). That matter was considered by the Magistrate Judge and resulted in the issuance of his Recommended Decision on Plaintiff's Motion for Partial Summary Judgment, filed on August 11, 1993 (Docket No. 24).[1] Plaintiff has now objected to the Recommended Decision of the Magistrate Judge (Docket No. 25). The Defendant has filed its written response to those objections (Docket No. 27). The matter is now before the Court for *de novo* consideration of the Magistrate Judge's Recommended Decision on the aforesaid objections of Plaintiff.

The Magistrate Judge concluded that there was no ambiguity in the phrase "payments under this statute" as it is used in 33 U.S.C. § 944(c)(2)(A). He found that the subject language "is clear and unambiguous," Recommended Decision at 8, and was intended to encompass only payments made specifically because of the requirements of the LHWCA. He further found that "[p]ayments made under Maine's [W]orkers' [C]ompensation [A]ct are not mandated by the LHWCA and, therefore, are not payments under LHWCA." *Id.* Finding no ambiguity in the Act, he found no occasion to apply the rule of deference to an administrative agency's interpretation of ambiguous statutory language within the agency's expertise and legal purview. That rule is articulated in the landmark case of *Chevron U.S.A. v. National Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and recently followed in *Amtrak v. Boston & Maine Corp.,* —— U.S. ——, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992).

■ Since the Magistrate Judge nowhere in the Recommended Decision cites either of those cases, and because the rule of the cases is of seminal importance in federal jurisprudence, this Court has been at pains in this review of the Recommended Decision to be sure that the Magistrate Judge has correctly understood the rule of those cases and has properly distinguished this case from that class of cases in which the rule is to be applied. The Court fully agrees with the Magistrate Judge's construction of the statute and his finding that it is not, as Plaintiff contends, ambiguous. The Court agrees that the language encompasses *only* payments made pursuant to the requirements of the LHWCA and does not include payments made under Maine's Workers' Compensation Act.[2]

---

1. A copy of the Recommended Decision is attached hereto as Exhibit "A."

2. The provisions made by Congress in the LHWCA for access to the fund for which the assessments were made bolster, in the Court's view, the Court's interpretation of the language of the Act in question.

   BIW argues that it should not be assessed for compensation payments made under state law, when the benefits of the Special Fund are limited to employers whose workers file federal claims. Plaintiff Secretary, on the other hand, asserts that workers can qualify for Special Fund awards *even if* they file claims under state law. While Plaintiff's assertion may be technically correct, section 903(e) of the LHWCA has been interpreted so that awards made under the Special Fund are offset by the amount that employers have paid on underlying state law claims. Title 33 U.S.C. § 903(e) as interpreted in *Kenneth Stewart v. Bath Iron Works Corp.,* BRB Nos. 89–1871, 89–1871A, (1991), 1991 WL 313891. Thus interpreted, BIW employees can access the Special Fund and obtain the benefit of those contributions made by BIW on their behalf only to the extent that awards under the Fund *exceed* state compensation payments. Yet, Plaintiff argues that these same payments should be included *in determining BIW's contribution to the Fund.*

   Section 903(e), requiring that state compensation payments be deducted from any liability under the federal act, was among the 1984 amendments to the LHWCA, along with section 944(c)(2)(A) which altered the formula for assessing employer contributions to the Special Fund. It makes sense that these amendments were meant to complement each other, with section 903(e) offsetting the effects of removing state compensation payments from the Special Fund equation. That is, if employers were no longer being assessed for state law compensation payments in determining their *pro rata* contribution to the Fund, then employees of those same employers could not benefit from the Fund without first deducting state compensation payments from the amounts awarded.

   The statutory interpretation urged by Plaintiff would result in the reverse situation: not only would BIW be required to contribute to the Fund in proportion to its state compensation payments, but those same payments would be used as an offset to any award secured under the Fund by a BIW employee. It seems to this Court that the plain language of the statute and its legislative history support a more equitable and rational result, whereby employers are assessed for compensation payments made pursuant to the LHWCA *only,* and not under state law, in determining their Special Fund contributions.

652

The Court has also satisfied itself that the absence of ambiguity in the operative language deprives Plaintiff of the benefit of the *Chevron* rule of deference. In *Chevron*, where the Court required the rule of deference to be followed, the Court found the word "source," the meaning of which was there in issue, to be ambiguous. It said the language as used in the statute

> sheds virtually no light on the meaning of the term 'stationary source'.... Basically, however, the language of § 302(j) simply does not compel any given interpretation of the term 'source'.... We are not persuaded that parsing of general terms in the text of the statute will reveal an actual intent of Congress.

*Chevron*, 467 U.S. at 860–61, 104 S.Ct. at 2790–91. The existence of this ambiguity creating a lacuna of congressional intent is the predicate for the Court's invocation of the rule of deference in *Chevron:*

> While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests *which Congress itself either inadvertently did not resolve* or intentionally left to be resolved by the agency....

*Chevron*, 467 U.S. at 865–66, 104 S.Ct. at 2793 (emphasis provided).

The Court, citing *Chevron* among other cases, more specifically articulated the predicate for the application of the rule of deference in the *Amtrak* case:

> These decisions mandate that when a court is reviewing an agency decision based on a statutory interpretation, 'if the statute is silent *or ambiguous* with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute' [quoting from *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782]. If the agency interpretation is not in conflict with the plain language of the statute, deference is due.... In ascertaining whether the agency's interpretation is a permissible construction of the language, a court must look to the structure and the language of the statute as a whole.... *If the text is ambiguous*

> *and so open to interpretation in some respects,* a degree of deference is granted to the agency, though a reviewing court need not accept an interpretation which is unreasonable.

*Amtrak*, —— U.S. at ——, 112 S.Ct. at 1401–02 (emphasis added).

■ Clearly, in this case, on a finding that there is no ambiguity in the meaning of the subject language of the LHWCA, the Court is to give force to the plain meaning of the statute and there is no occasion for the plainly expressed intention of Congress to be overridden by the Court's deference to an interpretation of the language of the statute by the agency that conflicts with that plain meaning. Accordingly, it is hereby OR-DERED as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby *AF-FIRMED;* and

(2) Summary judgment be, and it is hereby, *GRANTED* in favor of Defendant on Plaintiff's Motion for Partial Summary Judgment.

### EXHIBIT A

### *RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

DAVID M. COHEN, United States Magistrate Judge.

Before the court at this time is the plaintiff's motion for partial summary judgment (Docket No. 15). The case is brought under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or "Act"), 33 U.S.C. §§ 901–50. In part, the LHWCA provides for an annual assessment of participating employers and insurers for the purpose of maintaining the so-called "special fund," which is available for certain payments related to workers' compensation. 33 U.S.C. § 944. The plaintiff, Secretary of Labor of the United States, asserts that Bath Iron Works Corporation ("BIW"), which acts as a self-insurer in regard to compensation under the LHWCA, has in its annual required reports understated its workers' compensation payments made under the Act insofar as it

has failed to include in those reports payments it characterizes as having been made solely under state workers' compensation law. Complaint ¶¶ 6–8. As a result, according to the Secretary, the Department of Labor ("DOL") has been unable to issue accurate assessments to BIW of its annual contributions to the "special fund" and, consequently, BIW has not paid the full amount of its liabilities. Complaint ¶ 9. In opposition, BIW contends that, because it files a notice of controversion pursuant to section 914(c) of the Act whenever it makes payment under Maine's workers' compensation law, it has made no payments under the LHWCA[1] and that, in any event, payments it makes under state law are never payments made "under" the LHWCA for the purpose of "special fund" assessment. *See* Defendant's Opposition and Reply Memorandum at 3, 7 (Docket No. 12).

In his motion, the Secretary seeks a declaration that BIW's characterization of its legal obligation to make payments under the LHWCA as not including payments made pursuant to the Maine act is erroneous, and requests an order compelling BIW to render an accounting which includes such payments.

## FACTUAL CONTEXT

For purposes of the motion, the essential facts may be summarized as follows: Since

September 1, 1988 BIW has acted as a self-insurer of its workers' compensation liabilities under the LHWCA.[2] Complaint ¶ 4, Answer ¶ 4. When a BIW employee is injured on the job, BIW reports the injury to both the United States Department of Labor, Employee Standards Administration, Office of Workers' Compensation Programs ("OWCP"), and the Maine Workers' Compensation Commission, using the same federal form, LS–202. Affidavit of Daniel J. Ferguson ¶ 2, Attachment to Defendant's Opposition ("Ferguson Affidavit") (Docket No. 12); Exh. A to Ferguson Affidavit. Because the majority of BIW employees choose to pursue workers' compensation benefits under Maine law, BIW has adopted the practice of processing claims under state law.[3] Ferguson Affidavit ¶ 2. The coverage of the Maine workers' compensation act is essentially equivalent, with some exceptions, to the federal act, and the benefit levels under Maine law are generally greater than or equal to those under the LHWCA. *Id.* The procedures for resolving disputes concerning entitlement to compensation are simpler under the Maine program. *Id.*

When BIW voluntarily pays compensation under the LHWCA without an award it files a Form LS–206. *Id.* ¶ 4; Exh. C to Ferguson Affidavit. It does not file this form when it pays compensation under state law. Ferguson Affidavit ¶ 4. Whenever it reports an

---

1. Earlier in the case BIW filed a motion for judgment on the pleadings in which it set out what appeared to be a straightforward issue of statutory construction, *i.e.* whether payments made by BIW solely under Maine workers' compensation law were also payments under the LHWCA for purposes of "special fund" assessment pursuant to section 944. In his response and a cross-motion for judgment on the pleadings, the Secretary for the first time raised the issue of controversion, stating that unless BIW had controverted the right to compensation under the LHWCA, any compensation paid by BIW under the state act would also be a payment "under" the LHWCA. The Secretary suggested that BIW had not filed notices of controversion. *See* Memorandum in Support of Plaintiff's Cross-Motion, and in Opposition to Defendant's Motion, for Judgment on the Pleadings at 13 (Docket No. 8). The Secretary has since conceded that BIW did in fact file notices of controversion in every case in which it paid compensation under the state act. He now argues that those notices

which state as the only grounds on which BIW purports to controvert the claimant's rights that the injured worker or survivor is pursuing a claim under the state act are of no legal effect and do not free BIW from its obligations under the LHWCA, and further, that payments under the state act are not payments "under" the federal act, even though both may provide similar relief. Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment at 4, 7 (Docket No. 20).

2. 33 U.S.C. § 932 requires that employers secure the payment of compensation due under the LHWCA to workers and survivors either by obtaining insurance from an approved insurer or by receiving approval of the Secretary of Labor to self-insure.

3. Maine's workers' compensation law for the time period 1988–1992 is found in 39 M.R.S.A. §§ 1–195 (1989 and 1992 Supp.).

injury that is covered by the state act to the OWCP, BIW also files a "Notice of Controversion of Right to Compensation" (Form LS–207). *Id.* ¶ 5; Exh. D to Ferguson Affidavit. BIW has followed this practice in every instance of a reported injury during the period covering 1988 through 1992 when it has voluntarily paid workers' compensation under Maine law. Ferguson Affidavit ¶ 5.

As a self-insurer, BIW is legally responsible for filing annual reports with the DOL stating the total amounts of workers' compensation it has paid under the LHWCA. Complaint ¶ 6, Answer ¶ 6. BIW has filed reports of its workers' compensation payments for reported injuries only if the injured worker or survivor has filed a claim under the LHWCA. Affidavit of Joseph Olimpio ¶ 3 ("Olimpio Affidavit") (Docket No. 18). ·Most of the cases in which the worker has filed a claim under the LHWCA and BIW has made a report of payments have involved assertions of noise-induced hearing impairments or asbestos related respiratory diseases. *Id.*

The OWCP examined the records of BIW's annual reports beginning in 1988 (when BIW began to self-insure) and found that it reported no payments under the LHWCA in the last four months of 1988, 13 cases in 1989, 7 cases in 1990, 28 cases in 1991 and 34 cases in 1992. *Id.* ¶ 2. During that same time period, BIW reported approximately 4,794 injuries involving lost time from work or death. *Id.* ¶ 4. A random sample of 50 reported non-hearing loss, non-asbestos related injury cases revealed that in 92% of these cases (46) BIW had filed notices of controversion in which it stated as the sole ground on which the claimant's rights to compensation were controverted that the individual was pursuing the claim under the state workers' compensation law. *Id.* ¶¶ 5–6. In· all but one of the remaining cases, BIW asserted additional, identical grounds, stating "Coverage, Notice, Statute of Limitations, Causal relationship, Last injurious exposure not during coverage of carrier [*sic.*], Section

7(d), AWW [amount of weekly wage], Extent of disability, Employment under LHWCA, Section 8(f)." *Id.* ¶¶ 6–7.

## SUMMARY JUDGMENT STANDARDS

Fed.R.Civ.P. 56(a) provides that "[a] party seeking to recover upon a claim … may … move with ,or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Such motions must be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of. law.

Fed.R.Civ.P. 56(c). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986). In determining if this burden is met, the court must view the record in the light most favorable to the nonmoving party and "give that party the benefit of all reasonable inferences to be drawn in its favor." *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990) (citation omitted). "Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial." *Id.* at 73 (citations omitted); Fed. R.Civ.P. 56(e); Local R. 19(b)(2). A fact is "material" if it may .affect the outcome of the case; a dispute is "genuine" only if trial is necessary to resolve evidentiary disagreement. *Ortega–Rosario,* 917 F.2d at 73.

## LEGAL ANALYSIS

The LHWCA provides that compensation "shall be payable" to workers engaged in maritime employment,[4] expressly including shipbuilders and ship repairers, who are injured or die from an injury "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock

---

4. 33 U.S.C. § 902(3) provides a comprehensive definition of an "employee" for purposes of the LHWCA.

... or other adjoining area customarily used by an employer in ... repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). The statute further provides that "any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law ... shall be credited against any liability imposed by this chapter." 33 U.S.C. § 903(e).

Compensation must be paid "periodically, promptly, and directly" to the injured employee, without an award, except where liability to pay compensation is controverted by the employer. 33 U.S.C. § 914(a). However, a claim must be filed within one year after the injury or death or, if payment has been made without an award on account of an injury or death, within one year after the date of the last payment.[5] 33 U.S.C. § 913(a). Failure to timely file a claim bars the right to compensation *Id.*

Unless liability is controverted, the first payment of compensation is due on the fourteenth day after the employer has been notified by an employee of an injury (or, in the case of death, by a beneficiary) or has knowledge of an injury or death. 33 U.S.C. § 914(b). A notice of controversion must be filed on or before the fourteenth day after the employer has notice or knowledge of an injury or death. 33 U.S.C. § 914(d). The controversion notice must be "in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted." *Id.* Where compensation is payable without an award, no notice of controversion has been filed and the employer fails to make payments, a 10% penalty is assessed. 33 U.S.C. § 914(e).

Both insurance carriers and self-insurers are required to contribute to the "special fund," the proceeds of which are used for certain purposes. 33 U.S.C. § 944(a), (c), (i). For example, the fund provides payments beyond the first 104 weeks in so-called "second-injury" cases in which an employee who has an existing permanent partial disability suffers a subsequent injury that results in an increase in that disability, thus relieving the employer or its insurer from further responsibility for payment. 33 U.S.C. § 908(f). The availability of "special fund" relief serves as an incentive for an employer to hire partially disabled workers. *See Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs*, 950 F.2d 56, 58 (1st Cir.1991).

The "special fund" is largely made up of annual payments by insurance carriers and self-insurers. The individual contribution to the fund is based on a prorated assessment by the Secretary of Labor, determined by

(A) computing the ratio (expressed as a percent) of (i) the carrier's or self-insured's workers' compensation payments under this chapter during the preceding calendar year, to (ii) the total of such payments by all carriers and self-insureds under this chapter during such year;

(B) computing the ratio (expressed as a percent) of (i) the payments under section 908(f) of this title during the preceding calendar year which are attributable to the carrier or self-insured, to (ii) the total of such payments during such year attributable to all carriers and self-insureds;

(C) dividing the sum of the percentages computed under subparagraphs (A) and (B) for the carrier or self-insured by two; and

(D) multiplying the percent computed under subparagraph (C) by [the Secretary's estimate of probable expenses of the fund during that calendar year and the amount

---

**5.** 33 U.S.C. § 913(b)(2) provides an exception for claims for compensation for death or disability due to an occupational disease which does not immediately result in death or disability. In these cases, the claimant must file within two years after he or she becomes aware or, with reasonable diligence, should have been aware of

the relationship between the employment, the disease and the death or disability, or within one year of the date of the last payment of compensation. *Id.* This category would include BIW claims related to hearing loss and exposure to asbestos.

of payments required to maintain adequate reserves in the fund].

33 U.S.C. § 944(c)(2).

Reduced to its essentials, the Secretary's position is that the language of subsection 944(c)(2)(A), which speaks of workers' compensation payments made "under this chapter," includes all payments made under the Maine workers' compensation act where liability exists concurrently under the LHWCA, even when no compensation is in fact paid under the LHWCA. No authority outside the statute is cited in support of this proposition and my own research has unearthed none. BIW resists the Secretary's interpretation.

Having canvassed the LHWCA in its entirety, I am satisfied that the language of subsection 944(c)(2)(A) is clear and unambiguous. The subsection speaks in terms of payments, not liability. A reading of the Act makes clear that Congress was well aware of the distinction between the two. *Compare, e.g.,* 33 U.S.C. § 903(e) (amount paid under another workers' compensation law shall be credited against liability imposed by this chapter) *with* § 914(a) (compensation under this chapter shall be paid except where liability to pay is controverted). Payments made under Maine's workers' compensation act are not mandated by the LHWCA and, therefore, are not payments under the LHWCA. Under the circumstances, there is no call for further inquiry into the meaning of the Act's "special fund" provisions. *See D'Errico v. General Dynamics Corp.,* No. 92–2417 [996 F.2d 503, 504–05], 1993 U.S.App. LEXIS 15296 at *3–*4 (1st Cir. June 25, 1993).

This said, I note nevertheless that both parties cite the same legislative history to show that one of the purposes of the 1984 amendments to the LHWCA,[6] which produced the present "special fund" formula, was to correct the inequitable system that had developed whereby infrequent users of the "special fund" were paying disproportionately high assessments, while frequent users

paying a disproportionately low assessment could "dump" cases into the fund and reap its benefits. *See* Memorandum in Support of Defendant's Motion for Judgment on the Pleadings at 13–14 (Docket No. 4); Memorandum in Support of Plaintiff's Cross–Motion, and in Opposition to Defendant's Motion, for Judgment on the Pleadings at 31–32 (Docket No. 8). The new formula was to make the assessment reflective of program participation and usage of the fund. BIW's interpretation of section 944 is consistent with this purpose.

I also take note of a change in language from the prior formula for calculating an employer's assessment (the "1972 formula") to the present formula (the "1984 formula"). The "1972 formula" provided:

At the beginning of each calendar year the Secretary shall estimate the probable expenses of the fund during that calendar year and each carrier or self-insurer shall make payments into the fund on a prorated assessment by the Secretary in the proportion that the total compensation and medical payments made on risks covered by this Act by each carrier and self-insurer bears to the total of such payments made by all carriers and self-insurers under the Act in the prior calendar year in accordance with a formula and schedule to be determined from time to time by the Secretary to maintain adequate reserves in the fund.

Longshoremen's & Harbor Workers' Compensation Act Amendments of 1972, P.L. 92–576, § 8(c)(2), 92 Stat. 1452, 1458 [86 Stat. 1251, 1256] (1972). Specifically, the language changed from "payments made on risks covered by this Act" in the "1972 formula" to "payments under this chapter during the preceding calendar year" in the present formula to describe compensation payment activity on the part of the employer. As indicated earlier, the present language is narrow and unambiguous. It is also consistent with an employer's exclusion from its reports to the OWCP of workers' compensation payments it makes under state law.

6. Longshore & Harbor Workers' Compensation Act Amendments of 1984, P.L. 98–426, §§ 1–28,

98 Stat. 1639 (1984).

As I have determined that payments made under state law are not payments under the LHWCA for reporting and "special fund" assessment purposes, the Secretary's argument that BIW's controversion notices are without legal effect, because they are not made in "good faith" inasmuch as they fail to state sufficient grounds for controversion, is simply irrelevant.

However, the practice of filing notices of controversion deserves some comment. The purpose of the statutory requirement that a notice of controversion be filed when the right to compensation is at issue is so administrative proceedings might begin. *See National Steel & Shipbuilding v. Bonner*, 600 F.2d 1288, 1294 (9th Cir.1979). Section 914(h) states that the deputy commissioner

shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation, or from the employer, that the right to compensation is controverted, or that payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of the parties.

33 U.S.C. § 914(h). Apparently, the deputy commissioner has routinely processed BIW's notices since BIW became self-insured in 1988. This practice suggests that the Secretary has considered BIW's notices to be valid. The statute does not preclude an employee from asserting a claim under the LHWCA even if such a notice has been filed.

The statute clearly states what must be included in a notice of controversion. It must be a notice "in accordance with a form prescribed by the Secretary, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted." 33 U.S.C. § 914(d). Although the "right to compensation" is what is at issue, it must be considered in the context of the Act as a whole.

While section 903 establishes liability, section 914 is concerned with penalties for nonpayment. It is under section 903(e) that BIW's liability is offset by its payments made under state workers' compensation law. The tactic of filing notices in every case in which the worker is expected to file a claim under Maine's workers' compensation act is the only means that BIW has of being assured that a penalty will not be assessed for its failure to make payments otherwise required by the LHWCA. Its notices give as the reason for controversion that payment is being made pursuant to state law. Given the language of the LHWCA as a whole, BIW's protective, anticipatory filings appear to be entirely reasonable.

I conclude that the plaintiff's motion for partial summary judgment should be denied. There are no material facts in dispute as both parties acknowledge that the payments at issue here, *i.e.*, those made under state workers' compensation law, have not been reported to the OWCP for the purpose of assessing BIW's annual contribution to the "special fund."

In an appropriate case, a court may grant summary judgment to the non-moving party *sua sponte. See Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1513 (1st Cir.1989); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 at 29–30, 29–30, 34 (1983). This is such a case. The original movant, the Secretary, has had an adequate opportunity to show that there is a genuine issue in dispute or that BIW is not entitled to summary judgment as a matter of law. *See Bonilla v. Nazario*, 843 F.2d 34, 37 (1st Cir.1988); *Renaissance Yacht Co. v. Stenbeck*, 810 F.Supp. 15, 16 (D.Me.1992). I therefore conclude that summary judgment should be granted in favor of the defendant.

## CONCLUSION

For the foregoing reasons, I recommend that the plaintiff's motion for partial summary judgment be *DENIED,* but that summary judgment be *GRANTED* in favor of the defendant.

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

*Dated at Portland, Maine this 11th day of August, 1993.*