David E. LEWIS, Trustee of Edson Express, Inc., Plaintiff,

v.

HELIOS CONTAINER SYSTEMS, INC., Defendant.

No. 93 C 2139.

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1993.

Joel H. Steiner, Paul Anthony Gajewski (argued), Axelrod, Goodman, Steiner & Bazelon, Chicago, IL, for plaintiff.

Gerald L. Morel (argued), John F. Scanlan, Masuda, Funai, Eifert, & Mitchell, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff David E. Lewis, bankruptcy trustee for Edson Express, Inc., brings this suit to recover amounts Edson allegedly undercharged defendant Helios Container Systems, Inc. Presently before the court is defendant's motion to stay these proceedings and refer the case to the Interstate Commerce Commission (ICC) for a determination of the reasonableness of the rate Edson seeks to collect. For the reasons set forth below, we grant Helios' motion for a referral of this case to the ICC. This action is dismissed with leave to reinstate pending a ruling by the ICC.

### I. Background

Edson, a Colorado trucking company, provided shipping services for Helios, an Illinois manufacturer of industrial containers. As is frequently the case with commercial carriers, Edson charged Helios a discounted rate for its services. Pursuant to federal regulations, Edson filed a tariff reflecting the discounted rate with the ICC in May, 1987. The tariff applied to goods shipped from Addison, Illinois, where Helios had its plant. In April, 1990, however, Helios moved its plant from Addison to Bloomingdale, Illinois, approximately five miles away. Although Edson continued to provide shipping services for Helios at the same discount rate, Edson failed to amend the filed tariff to reflect the new point of origin as Bloomingdale. Helios paid the invoiced amounts, totalling $12,-781.18, in full.

On January 21, 1991, Edson filed for bankruptcy, and Lewis was appointed as bankruptcy trustee. Upon discovering that the tariff did not list the correct point of origin, Lewis issued revised invoices to Helios, claiming that the discounted rate was inapplicable to Helios after it moved from Addison

to Bloomingdale. He therefore demanded that Helios repay Edson $9,930.44, the amount discounted for services provided between April, 1990 and January, 1991, resulting in a total payment of $22,711.62, an increase of eighty percent over the amount Edson originally billed Helios. Helios refused to pay the new charges and Lewis brought this action. As an affirmative defense, Helios claimed that the non-discounted rate that Edson sought to charge was unreasonable. Asserting that the ICC has exclusive jurisdiction to determine rate reasonableness, Helios filed the instant motion to stay further proceedings in this court and refer the rate reasonableness issue to the ICC.

### II. Discussion

■ Federal regulations require all common carriers to file tariffs with the ICC, in which the carrier publishes the rates it will charge its customers. 49 U.S.C. § 10101 *et seq.* Carriers may not charge or receive a rate that they have not published in a filed tariff. 49 U.S.C. § 10761(a). As a result, a shipper may recover any amounts that a carrier has charged it over and above the filed tariff. *Brizendine v. Cotter & Co.*, 4 F.3d 457, 460 (7th Cir.1993). Likewise, a carrier may recover any "undercharge," that is, the difference between a rate actually charged and a higher filed rate. *Madler v. Artoe*, 494 F.2d 323, 326 (7th Cir.1974). These rules comprise the so-called "filed rate doctrine." *See Maislin Industries U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).

■ Although traditional equitable defenses, such as mistake, waiver, and estoppel, are not applicable to the filed rate doctrine, a shipper may avoid paying a full tariff rate if it can demonstrate that the rate is unreasonable. *See Reiter v. Cooper*, —— U.S. ——, —— ——, 113 S.Ct. 1213, 1218–19, 122 L.Ed.2d 604 (1993); *accord* 49 U.S.C. § 10701(a); 49 U.S.C. § 11705(b)(3). However, the determination of rate reasonableness is within the primary jurisdiction of the ICC, described by the Supreme Court in the carrier/shipper context as follows:

[P]rimary jurisdiction ... is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a "referral" to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling. Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.

*Reiter,* —— U.S. at ——, 113 S.Ct. at 1220 (citations omitted). In the present case, Helios has asserted that the full rate which Lewis seeks to collect is unreasonable, and therefore asks us to stay the current proceedings and refer the rate reasonableness issue to the ICC.[1]

Lewis apparently concedes that the ICC is generally the appropriate forum to initially consider whether a given rate is reasonable, but articulates two reasons that we should deny Helios' motion. Lewis first contends that a referral to the ICC is inappropriate because Helios has not made a threshold showing that the newly applied rate is unreasonable. We initially note that there is some debate as to whether the "threshold" requirement is justified. *Compare Transcontinental Freight Systems, Inc. v. Vertex Transportation, Inc.,* No. 93 C 787, 1993 WL 317261, at *2 (N.D.Ill. Aug. 18, 1993) (threshold showing of unreasonableness required) *with De'Medici v. Flygt Corp.,* 157 B.R. 397, 403 n. 6 (Bankr.N.D.Ill.1993) ("no longer clear" that threshold showing of unreasonableness required). We need not weigh in on this dispute, however, because we find that Helios has satisfied the "minimal evidentiary

showing" necessary to justify referral to the ICC. *Transcontinental,* No. 93 C 787, 1993 WL 317261, at *2.

■ Helios asserts, and Lewis does not contest, that Lewis is essentially seeking an eighty percent increase above the rate Helios was originally charged, based solely upon the relocation of Helios' plant five miles away from its earlier location. In a case virtually identical to this one, the court found that the defendant's allegation that "it is unreasonable to have such a large difference in rates for sites ... which are only a half mile apart" was in and of itself a sufficient basis to justify referral to the ICC.[2] *Lifschultz Fast Freight, Inc. v. A. Kush & Assoc., Ltd.,* 91 C 1364, 1991 WL 134192 at *2 (N.D.Ill. July 16, 1991). Likewise, in *Lifschultz Fast Freight, Inc. v. JBS Warehousing, Inc.,* 809 F.Supp. 51, 53 (N.D.Ill.1992), the court concluded that a forty percent increase over the originally charged rate constituted a sufficient showing to warrant referral to the ICC. It is apparent from these cases that Helios has satisfied any threshold requirement for referral to the ICC.

■ Lewis also contends, however, that a substantial backlog of cases at the ICC could delay consideration of this issue for years, and therefore requests that we apply the futility doctrine. This doctrine allows a court to waive a requirement that an administrative agency initially consider an issue, where application to the agency would be futile. *See, e.g. Walker v. Southern Ry.,* 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966) (prospect of inordinate delay good cause for applying the futility doctrine). However, the "futility" exception generally applies to the doctrine of exhaustion of administrative remedies, not, as here, to the doctrine of primary jurisdiction. *See Reiter,* —— U.S. at —— – ——, 113 S.Ct. at 1220–21 (comparing primary jurisdiction and exhaus-

---

1. We note that Helios has raised the issue of rate reasonableness as an affirmative defense. Although the unreasonableness of a given rate is properly raised in a counterclaim rather than as an affirmative defense, we shall treat Helios' challenge to the rate that Lewis seeks to charge as a counterclaim pursuant to Fed.R.Civ.P. 8(c). *See Reiter,* —— U.S. at ——, 113 S.Ct. at 1217.

2. The opinion does not identify what the respective rates were. However, we conclude that the

80% increase sought by Lewis clearly constitutes a "large difference." We also note that, although Helios moved its plant five miles, as opposed to the one-half mile move in *A. Kush,* the shipments in the present case involved the transportation of goods in excess of one thousand miles. In comparison, the difference between one-half mile and five miles is negligible, and clearly an insufficient basis for distinguishing *A. Kush.*

tion with respect to ICC). Indeed, Lewis has identified only one case, *Jennings v. Tamaqua Cable Products Corp.*, 157 B.R. 109 (Bankr.M.D.Tenn.1993), in which the futility doctrine was employed to deny a motion to refer to the ICC for a determination of rate reasonableness. No other court has applied the futility doctrine in such cases, despite the multitude of published and unpublished opinions on this topic. Furthermore, application of the futility doctrine in this case would require its application every time we faced a similar fact pattern, a fact pattern which appears with alarming frequency. *See Orscheln Bros. Truck Lines v. Zenith Elec. Corp.*, 899 F.2d 642, 645 (7th Cir.), *cert. granted and judgment vacated*, 498 U.S. 933, 111 S.Ct. 334, 112 L.Ed.2d 300 (1990) (referring to the filing of lawsuits virtually identical to the current one as "a pastime of trustees of bankrupt carriers"). Accordingly, absent some special circumstance, we are unwilling to even consider the futility doctrine as a basis for denying Helios' motion.[3]

### III. Conclusion

For the reasons set forth above, defendant's motion for a referral of this case to the ICC is granted. We dismiss this action with leave to reinstate within thirty days after the ruling by the ICC. It is so ordered.

---

3. Indeed, although the Supreme Court in *Reiter* acknowledged that "substantial delay" might tilt the scale against stay and referral, the Court expressly noted that when the suing carrier is in bankruptcy, the equities shift in favor of staying the litigation and referring the rate reasonableness issue to the ICC. *Reiter,* —— U.S. at ——, 113 S.Ct. at 1221.