L. Lou ALLEN, Trustee on Behalf of the Bankruptcy Estate of TSC Express Co., Plaintiff,

v.

SPIEGEL, INC. and United Pool Distribution, Incorporated, Defendants.

No. 93 C 2816.

United States District Court, N.D. Illinois, Eastern Division.

June 13, 1994.

Lawrence M. Liebman, Timothy F. Eddy, Eddy & Liebman, Chicago, IL, for L. Lou Allen, plaintiff.

Sara Elwood Cook, Christine Louise Olson, Ellen Debra Holzman, McKenna, Storer, Rowe, White & Farrug, Chicago, IL, for Spiegel, Inc., defendant.

Floyd Babbitt, Donald Joseph Vogel, Sara Lynne Thomas, Fagel & Haber, Chicago, IL, for United Pool Distribution, Inc., defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff L. Lou Allen, as trustee of the bankruptcy estate of TSC Express Co., brings this action to recover alleged undercharges arising from the transportation of defendant Spiegel, Inc.'s merchandise. Presently before the court is Allen's motion for summary judgment and defendants' motion for stay and referral to the Interstate Commerce Commission ("ICC"). For the reasons set forth below, Allen's motion for summary judgment is denied, and defendants' motion for referral to the ICC is granted. This action is dismissed with leave to reinstate within thirty days after a ruling by the ICC.

1. Defendant United Pool Distribution, Inc. is an ICC-licensed property broker; United arranged

## I. Background

Between May, 1988 and July, 1989, TSC Express Co. transported numerous shipments of defendant Spiegel, Inc.'s merchandise from Chicago, Illinois to various points throughout the southeastern United States.[1] As an interstate motor carrier, TSC was required to "publish and file" its tariff rates for common carriage with the ICC. 49 U.S.C. § 10762. After TSC filed for bankruptcy protection, an audit disclosed that the rates which Spiegel had actually been charged for the shipments at issue were less than those on file with the ICC. Accordingly, Allen, as trustee for TSC, brought this action to collect the difference.

## II. Discussion

Federal regulations require all common carriers to file tariffs with the ICC, in which the carrier publishes the rates it will charge its customers. 19 U.S.C. § 10101 *et seq.* Carriers may not charge or receive a rate that they have not published in a filed tariff. 49 U.S.C. § 10761(a). As a result, a shipper may recover any amounts that a carrier has charged it over and above the filed tariff. *Brizendine v. Cotter & Co.*, 4 F.3d 457, 460 (7th Cir.1993). Likewise, a carrier may recover any "undercharge," that is, the difference between a rate actually charged and a higher filed rate. *Madler v. Artoe*, 494 F.2d 323, 326 (7th Cir.1974). These rules comprise the so-called "filed rate doctrine." *See Maislin Industries U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). This doctrine, however, is only applicable to the extent that the shipments move under "common carrier" authority; if a shipment moves pursuant to contract authority, then the shipment is not subject to the filed rate doctrine. *Id.* In addition, pursuant to the Negotiated Rates Act of 1993 ("NRA"), which amended portions of the Interstate Commerce Act, a shipper may defend against an undercharge suit brought by a common carrier by demonstrating that the carrier's filed rate is unreasonable. 49 U.S.C. § 10701(a) ("A rate . . . related to transportation or service provided by a carrier . . . must be reasonable."). Defen-

for the transportation of Spiegel's merchandise with TSC during the relevant time frame.

dants have raised two claims in support of its motion for stay and referral. First, they argue that TSC functioned as a contract carrier with respect to the shipments at issue. Second, they allege that, even if TSC acted pursuant to its common carrier authority, the filed rates are unreasonable. A referral is therefore justified, defendants contend, because the resolution of both of these issues is within the primary jurisdiction of the ICC.

■ In the carrier/shipper context, the Supreme Court has described the doctrine of primary jurisdiction as follows:

> [P]rimary jurisdiction ... is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a "referral" to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling. Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.

*Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) (citations omitted). It has been well established, both before and after passage of the NRA, that the issues raised by defendants are indeed within the primary jurisdiction of the ICC. *See, e.g., Atlantis Express, Inc. v. Standard Transp. Servs., Inc.*, 955 F.2d 529, 532–38 (8th Cir.1992) (both issues); *Lewis v. Helios*, 844 F.Supp. 408, 410 (N.D.Ill.1993) (Aspen, J.) (rate reasonableness); *Jones Truck Lines, Inc. v. Ardco, Inc.*, No. 93 C 2265, 1993 WL 339096, at * 4–6 (N.D.Ill. Aug. 23, 1993) (both issues). *Accord* 49 U.S.C. § 11101(d) ("[If] a dispute arises as to whether certain transportation is provided in its common carrier or contract carrier capacity and the parties are not able to resolve the dispute consensually, the Commission shall have jurisdiction to, and shall, resolve the dispute."). The ICC is the established authority regarding issues of both contract versus common carriage and rate reasonableness; accordingly, it is entirely appropriate that these issues be referred to them.

■ Allen, however, raises a number of arguments which he claims justify a denial of defendants' motion. First, he maintains that the NRA is essentially preempted by the Bankruptcy Code. Specifically, he points to section 9 of the NRA, which provides:

> Nothing in this Act (including any amendment made by this Act) shall be construed as limiting or otherwise affecting application of title 11, United States Code, relating to bankruptcy; title 28, United States Code, relating to the jurisdiction of the courts of the United States (including bankruptcy courts); of the Employee Retirement Income Security Act of 1974.

Allen maintains that this section effectively voids application of the NRA to any trustee or bankrupt carrier. Virtually every court that has considered the issue, however, has disagreed. *See, e.g., Jones Truck Lines v. United States Brass Corp.*, No. 3:93–CV–1318–T, 1994 WL 395667 (N.D.Tex. Apr. 7, 1994); *Lewis v. H.E. Wisdom & Sons, Inc.*, No. 93 C 985, 1994 WL 110659 (N.D.Ill. Mar. 30, 1994); *Jones Truck Lines v. AFCO Steel, Inc.*, 849 F.Supp. 1296 (E.D.Ark. Mar. 17, 1994); *Jones Truck Lines v. Aladdin Synergetics, Inc.*, No. 3–93–0442, 1994 WL 150154 (M.D.Tenn. Feb. 11, 1994); *Gross Common Carrier, Inc. v. A.B. Dick Co.*, No. 93 C 5012, 1994 WL 8241 (N.D.Ill. Jan. 8, 1994). We see no reason to disagree with these well-reasoned decisions. Congressional intent in passing the NRA was clear; it was designed "to alleviate the freight motor carrier 'undercharge' litigation crisis by establishing a statutory procedure for resolving disputes from efforts by trustees for bankrupt motor carriers ... to collect additional amounts for past transportation...." S.Rep. No. 79, 103d Cong., 2d Sess. (1992). Allen's present suggestion that the bankrupt status of the carrier in fact *precludes* application of the NRA is therefore "absurd and patently at odds with Congress' intent in enacting the N.R.A." *Aladdin Synergetics, Inc.*, No. 3–93–0442, slip op. at 19.[2]

---

2. Instead, the generally accepted explanation of

the meaning of section 9 relates to the jurisdic-

■ Allen also maintains that defendants have failed to meet a threshold showing that the higher rates at issue are unreasonable. We initially observe that there is some debate as to whether the "threshold" requirement is appropriate. *Compare Transcontinental Freight Systems, Inc. v. Vertex Transportation, Inc.,* No. 93 C 787, 1993 WL 317261, at *2 (N.D.Ill. Aug. 18, 1993) (threshold showing of unreasonableness required) *with de'Medici v. Flygt Corp.,* 157 B.R. 397, 403 n. 6 (Bankr.N.D.Ill.1993) ("no longer clear" that threshold showing of unreasonableness required). For our purposes, however, this dispute is irrelevant, since we find that defendants have made a sufficient showing to warrant referral to the ICC in any event. They attach an affidavit of Michael Bange, an industry expert, who explains that the rates which Allen seeks to enforce are more than double the charges actually billed. Consistent with the practice of various other courts, we have previously allowed such a showing to justify referral on the issue of reasonableness. *Lewis v. Helios,* 844 F.Supp. 408, 410 (N.D.Ill.1993) (citing *Lifschultz Fast Freight, Inc. v. JBS Warehousing, Inc.,* 809 F.Supp. 51, 53 (N.D.Ill.1992); *Lifschultz Fast Freight, Inc. v. A. Kush & Assoc., Ltd.,* 91 C 1364, 1991 WL 134192, at *2 (N.D.Ill. July 16, 1991)). *See also Allen v. Allied Tube & Conduit Corp.,* No. 93 C 2300, slip op. at 2–3, 1994 WL 30958, at *1–2 (N.D.Ill. Jan. 31, 1994). We therefore reject Allen's contention that defendants have failed to make a sufficient showing of unreasonableness, assuming such a showing is even required.

■ Allen asserts further that a backlog of cases at the ICC would delay prompt consideration of the issues in this action. He therefore requests that we invoke the futility doctrine and decline to refer this case to that agency. However, in *Lewis v. Helios,* 844 F.Supp. 408, 410–11 (N.D.Ill.1993), we considered and rejected the identical argument. Allen has offered us no compelling reason to reconsider our decision in that case, and we therefore refuse to do so.

■ Finally, Allen requests that, even if we refer the above issues to the ICC, we first grant his motion for summary judgment pursuant to the filed rate doctrine and require defendants to pay the alleged undercharges sought in the complaint. However, the NRA itself provides that

> [w]hen a person proceeds under this section to challenge the reasonableness of the legally applicable freight rate or charges being claimed by a carrier ..., the person shall not have to pay any additional compensation to the carrier ... until the Commission has made a determination as to the reasonableness of the challenged rate as applied to the freight of the person against whom the claim is made.

49 U.S.C. § 10701(f)(6). Accordingly, the relevant statute expressly prohibits the action which Allen would have us take.

Allen's alternative "solution" of requiring defendants to pay the judgment into the court fares no better. First, it clearly frustrates the intent of Congress in passing the above language; there is no practical difference (at least to defendants) of being required to pay damages to the plaintiff versus into the court. Furthermore, the equities do not favor taking such an action. Although Allen suggests that this requirement would protect TSC in the event that defendants are insolvent in the future, there is no indication that the financial stability of either defendant is in jeopardy. Finally, and most importantly, there exist genuine issues of material fact which preclude the entry of summary judgment. As discussed above, the parties dispute whether the shipments moved pursuant to TSC's contract carriage or common carriage authority. The filed rate doctrine and tariff rates which Allen seeks to collect apply

tion of the federal courts. As stated by one member of Congress:

> Section 9 ... clarifies the Committee's intention that [the NRA] does not affect the jurisdiction of the courts of the United States, including bankruptcy courts, to determine any matter regarding a bankrupt carrier, other than determinations statutorily required by the NRA

to be resolved by the ICC.... The committee intends in Section 9 that the courts in which the bankrupt carrier's estate is being adjudicated should continue to make all other determinations necessary to fully and finally wind up a bankrupt carrier's estate proceedings.

139 Cong.Rec. H9597. *See AFCO,* 849 F.Supp. at 1306.

only in the latter instance. Because this dispute is central to resolution of Allen's claim, and because it is appropriately within the province of the ICC, we must deny Allen's motion for summary judgment. *See Jones Truck Lines, Inc. v. Chattem, Inc.,* No. 1:93–cv–281, slip op. at 10–12 (E.D.Tenn. Jan. 31, 1994) (denying motion for summary judgment for same reasons).

### III.   Conclusion

For the reasons set forth above, Allen's motion for summary judgment is denied and defendants' motion for referral to the ICC is granted. We dismiss this case with leave to reinstate within thirty days after a ruling by the ICC. It is so ordered.