L. Lou ALLEN, Trustee on Behalf of the
BANKRUPTCY ESTATE OF TSC
EXPRESS CO., Plaintiff,

v.

G.H. BASS & CO., Defendant.

Civ. No. 93–115–P–C.

United States District Court,
D. Maine.

Dec. 13, 1994.

David G. Lemoine, Lemoine & Lemoine, Old Orchard Beach, ME, David G. Sperry, Independence, MO, for plaintiff.

John Graustein, Drummond, Woodsum, Plimpton & MacMahon, Portland, ME, Joseph T. Bambrick, Jr., West Reading, PA, Stephen C. Whiting, Douglas, Whiting, Denham & Rogers, Portland, ME, for defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, Chief Judge.

The United States Magistrate Judge having filed with the Court on November 21, 1994, with copies to counsel, his Recommended Decision on Cross–Motions for Summary Judgment in the above-entitled matter (a copy of which is attached hereto as Exhibit "A"); and the time for filing objections thereto having expired without any objections having been filed; *see* 28 U.S.C. § 636(b)(1); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and this Court concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and having determined that no further ˙ proceeding is necessary; it is *ORDERED* as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby *AFFIRMED;*

(2) The Cross–Motions for Summary Judgment are hereby *DENIED;*

(3) The proceedings herein are *STAYED;*

(4) This matter is hereby referred for a second time to the Interstate Commerce Commission for a determination of the reasonableness of the filed rates of TSC Express Company;

(5) Each party and counsel are specifically *ORDERED* to *forthwith* file the appropriate papers to initiate prompt action by the Interstate Commerce Commission on the issues generated by that portion of the case referred to the Commission *and shall in good faith and forthwith, individually and collectively, exercise all due professional and personal vigor and best efforts to secure an adjudication of the aforesaid issues no later than May 1, 1995,* failing which each party shall file a written report with this Court describing in detail all that party's actions before the Commission and explaining fully the failure to obtain a final adjudication of the Commission by May 1, 1995. The Court will forthwith, on completion of such filings, *sua sponte* determine whether substantial sanctions should appropriately be imposed upon the parties *and counsel* for failure to make their best effort as required above;

and

(6) The parties herein shall comply fully with Interstate Commerce Commission procedures and avail themselves of all available mechanisms (including, *inter alia,* a motion to compel production of documents ordered to be furnished by the Plaintiff to the Defendant) to insure that the Interstate Commerce Commission decides the rate reasonableness issue on the merits.

The parties herein are hereby placed on notice that the Court will lift the stay and entertain an appropriate dispositive motion during the pendency of the Interstate Commerce Commission proceedings in the event that the Interstate Commerce Commission certifies that an identified party has failed to comply fully with any of its procedural orders, including orders regarding the submission of documents or other information to the

Commission and/or the opposing party and may, for proper cause, at any time impose sanctions *sua sponte.*

The Interstate Commerce Commission is hereby requested, should it again dismiss the proceedings before it in the absence of an adequate record, to make a specific finding as to which party is responsible for the dismissal for failure to comply with its procedures.

## EXHIBIT A

### UNITED STATES DISTRICT COURT

### DISTRICT OF MAINE

*L. Lou Allen, Trustee on behalf of the Bankruptcy Estate of TSC Express Co., Plaintiff*

v.

*G.H. Bass & Co., Defendant*

Civil No. 93–115–P–C

### RECOMMENDED DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

DAVID M. COHEN, United States Magistrate Judge.

The plaintiff in this proceeding is the trustee for the bankruptcy estate of TSC Express Co. ("TSC"), a motor common carrier that transported goods in interstate commerce for the defendant, G.H. Bass & Co. The plaintiff filed this action in an effort to recover from the defendant the difference between TSC's published tariff rates and the charges actually paid by the defendant for certain shipments allegedly made pursuant to those tariffs. The defendant has answered, asserted a variety of affirmative defenses, and filed a counterclaim to contend that TSC's published rates were unreasonable and that TSC is therefore entitled to reparations that offset the amount of undercharges sought by the plaintiff. The court previously granted the defendant's motion to stay the proceedings and refer the issue of rate reasonableness to the Interstate Commerce Commission

("ICC"), which subsequently dismissed without prejudice the defendant's petition for such a determination. The stay having now been lifted, both parties have filed motions for summary judgment.[1] These motions require the court to determine what effect, if any, should be given to the ICC's failure to reach the merits of the rate reasonableness question. I conclude that neither party is entitled to summary judgment, and that the court should act affirmatively, in the face of intransigence from both parties, to assure that this litigation leads to a binding determination of the competing claims presented by this case.

### I. Summary Judgment Standards

 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In determining if this burden is met, the court must view the record in the light most favorable to the nonmoving party and "give that party the benefit of all reasonable inferences to be drawn in its favor." *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990) (citation omitted). "Once the movant has presented probative evidence establishing its entitlement to judgment, the party opposing the motion must set forth specific facts demonstrating that there is a material and genuine issue for trial." *Id.* at 73 (citations omitted); Fed.R.Civ.P. 56(e); Local Rule 19(b)(2). A fact is "material" if it may affect the outcome of the case; a dispute is "genuine" only if trial is necessary to resolve evidentiary disagreement. *Ortega–Rosario,* 917 F.2d at 73.

---

1. The plaintiff has requested oral argument. Satisfied that I am able to address the issues presented on the basis of the parties' written submissions and my own research, I deny the request. See Local R. 19(f).

## II. Facts and Procedural History [2]

The defendant is a Maine corporation with a principal place of business in Falmouth, Maine. Complaint ¶ 2, Answer ¶ 2. During the period at issue in this proceeding, TSC Express Co. was a motor common carrier operating in interstate commerce pursuant to authority issued by the ICC. Complaint ¶ 3; Answer ¶ 3. On May 14, 1991 TSC filed a bankruptcy petition, pursuant to Chapter 7 of the Bankruptcy Code, with the U.S. Bank- ruptcy Court for the Northern District of Georgia. *Id.* The plaintiff is the trustee appointed by the Bankruptcy Court to represent the carrier's bankruptcy estate.

The defendant tendered freight to TSC for transportation in interstate and/or intrastate commerce; TSC accepted the freight and performed the transportation. Complaint ¶ 4; Answer ¶ 4. Subsequent to the bankruptcy filing, the plaintiff audited the shipments handled by TSC for the defendant by comparing the commodities, weights, points of origin and destination, and the declared

**2.** Local Rule 19(b) sets forth certain obligations of parties either moving for summary judgment or opposing such a motion. "[A] motion for summary judgment shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." Local R. 19(b)(1). Further,

[t]he papers opposing a motion for summary judgment shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record citations, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party. Local R. 19(b)(2).

Neither party has complied with these provisions of Local Rule 19(b). The memorandum in support of the plaintiff's summary judgment motion begins with a three-paragraph statement of facts. The first and third paragraphs are devoid of any record citations; the second paragraph contains a citation that apparently makes a general reference to a set of 343 exhibits attached to the Affidavit of Charles E. Shinn ("Shinn Affidavit") (Docket No. 21). *See* Brief in Support of Motion of L. Lou Allen, Trustee on Behalf of the Bankruptcy Estate of TSC Express Co. for Summary Judgment Against Defendant G.H. Bass & Co. ("Plaintiff's Memorandum") (Docket No. 20) at 1. In addition, in responding to the plaintiff's motion, the defendant has failed altogether to file the kind of responsive factual statement required by Local Rule 19(b)(2).

These lapses are inexcusable and represent a blatant disregard for the Local Rules of this court. The purpose of Local Rule 19(b) is to provide the court with a means to make a quick and accurate determination of whether a case presents a genuine issue of material fact for trial. Since the parties presumably have an intimate familiarity with the record when a case is the subject of a summary judgment motion, Local Rule 19(b) imposes a very small burden on the parties while relieving the court of the task of combing through the record in search of the material that is relevant to the motion. Compliance with Local Rule 19(b) is vital to the effective management of the court's busy docket. In light of the failure of both parties to properly support their respective motions for summary judgment, I recommend that both motions be denied.

Moreover, the disregard of Local Rule 19(b) is not the only example of the parties' indifference to the Local Rules and notions of responsible civil practice generally. Both parties have exceeded the page limits imposed by Local Rule 19(e), the plaintiff having sought leave to exceed the limit but only doing so three days *after* filing such a memorandum. The briefs of both sides are prolix, verbose, and full of inaccuracies, misstatements and contradictions. The lawyering on behalf of both parties falls woefully short of the standards to which attorneys practicing before this court have been traditionally held, and reflects a thorough disregard for one of the key purposes of the Civil Justice Reform Act, to reduce the amount of cost and delay that has plagued civil litigation in federal courts. *See* Civil Justice Reform Act of 1990, Pub.L. No. 101–650, § 102, 104 Stat. 5089 (1990).

Counsel's failures notwithstanding, I have fully read and considered all of the submissions of the parties and conclude that the dispositive factor at this stage of the litigation is not whether either party has demonstrated a lack of material facts in dispute, but the fact that the ICC has not yet ruled on the issue of rate reasonableness. The defendant's motion to strike the memorandum submitted by the plaintiff is denied. The defendant's motion for leave to file a memorandum in excess of the page limit set forth in Local Rule 19(e) is granted, not because a 36 page memorandum was necessary—it clearly was not—but simply to reflect that I have thoroughly read the entire memorandum.

The factual recitation that follows above is based on admitted allegations found in the complaint and on other docket entries, including orders of the ICC.

value of each shipment to the applicable tariff rate and rules. As a result of this audit, the plaintiff sent the defendant invoices totalling $23,384.16. Complaint ¶ 5; Answer ¶ 5. The defendant denies that it owes the plaintiff this amount. Answer ¶ 5.

The plaintiff filed his complaint in May 1993, setting forth the material allegations described above and seeking to recover the amount set forth in the invoices, as well as attorney fees and interest. The defendant answered, asserting a variety of affirmative defenses, among them that the doctrine of "primary jurisdiction" requires an ICC determination of the reasonableness of TSC's rates. The answer included a counterclaim seeking reparations pursuant to 49 U.S.C. § 11705(b)(3). The counterclaim alleges that TSC frequently quoted rates to shippers that were below its "alleged tariff rates," Counterclaim ¶ 2, that TSC did this in its dealings with the defendant because TSC realized that it could not obtain the defendant's business by charging the tariff rates, id. ¶ 3, that TSC's rates were unreasonable, id. ¶ 6, and that the defendant is therefore entitled to a judgment against the plaintiff for $23,384.16 plus attorney fees.[3] The plaintiff has denied all of the counterclaim allegations.

■■■ In August 1993 the court granted the defendant's motion to stay the proceedings and refer the issue of rate reasonableness to the ICC. See Delta Traffic Serv., Inc. v. Transtop, Inc., 902 F.2d 101, 107 (1st Cir.1990). The doctrine of "primary jurisdiction," which requires a court to refer a matter to a regulatory agency for determination of certain issues within the special · competence of the administrative body, and the expressed intent of Congress to achieve national uniformity in interstate shipping rates, requires the court to refer determinations of rate reasonableness to the ICC. Id. at 103–04; see also Reiter v. Cooper, —— U.S. ——, ——, 113 S.Ct. 1213, 1219–20, 122 L.Ed.2d 604, 617 (1993).

The defendant thereafter filed a petition with the ICC seeking a determination of the reasonableness of TSC's rates. On September 17, 1993 the ICC entered a procedural order stating, inter alia, that the petition would be handled pursuant to the ICC's "Modified Procedures" rules, see Attachment to First Status Report (Docket No. 14) ("ICC Order I"), which are a mechanism whereby the commission undertakes to resolve all material issues by relying on the written submissions of the parties, see 49 C.F.R. Part 1112. The procedural order directed the plaintiff to provide the defendant with certain materials within 20 days "to enable the [defendant] to present necessary information and copies of the documentation as part of its opening statement."[4] ICC Order I at 1.

---

3. The plaintiff has since revised downward to $22,921.08 the amount it claims is owing by the defendant. See Shinn Affidavit ¶ 11. Assumedly, the amount of the defendant's counterclaim is to be deemed likewise adjusted.

4. The ICC order specifically required that the plaintiff provide the defendant with:

the name of claimant and the amount of undercharge and interest, if any, sought;
a copy of the original bill of lading and a copy of the original freight bill;
a description of the goods shipped (if not fully and accurately described on the bill of lading);
the quantity of the goods shipped (if not accurately presented on the bill of lading);
the point of origin and the point of destination (and points of stop-off for pickup and delivery, if pertinent);
the classification or exception rating assigned the goods, in the case of class rates;
the mileage from origin to destination (via stop-off points, if pertinent) in the case of mileage rates;

the discount factor, if any, applied in the original billing compared with the discount factor, if any, applied in re-billing;
the per-unit line-haul rate as originally billed compared with the per-unit line-haul rate as re-billed; ·
the rate or charge for accessorial services, if any, originally billed compared with the rate or charge for accessorial services as re-billed;
total shipment charges as originally billed compared with total shipment charges as re-billed;
complete tariff authority (e.g., item number, page number, rule number, etc.) of specifically cited tariffs (all) used in the calculation of applicable rates and charges as originally billed and as re-billed;
freight bill payment information (including identity of payers); and
all other documents or data which is believed by claimant to substantiate its claim(s).
ICC Order I at 3. The commission provided a suggested format for the transmission of this data, and noted the importance of providing this information to claimants because, "without it, they cannot properly formulate their claims." Id.

The commission also set forth a schedule for the defendant's opening statement, the plaintiff's reply, and the defendant's rebuttal, if any. *Id.* at 2. None of these required filings were received by the ICC. G.H. Bass & Co., No. 41085 (Interstate Commerce Commission, July 13, 1994) (Docket No. 16) ("ICC Order III") at 1. Thereafter, the ICC reopened the record to receive further evidence and argument as to the applicability of the Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044–53 (1993). G.H. Bass & Co., No. 41085 (Interstate Commerce Commission, Jan. 11, 1994) (Docket No. 32) ("ICC Order II"). Again, the parties filed nothing with the ICC. ICC Order III at 1. On May 31, 1994 the defendant filed a motion with the ICC to dismiss the administrative proceeding on the ground that the plaintiff had failed to provide information to the defendant as directed by the commission. The ICC responded as follows:

> Both parties have had ample opportunity to develop a record, but have failed to do so. Without a record, the Commission is unable to consider the merits of TSC's undercharge claims referred to us by the court. In the absence of a record here, this proceeding will be dismissed without prejudice. The court is also advised that the undercharges sought by TSC have not been justified. The parties may seek to reopen this proceeding should they want the Commission to evaluate the merits of the claimed undercharges.

ICC Order III at 1–2.

Both parties then filed motions for summary judgment with the court. On September 8, 1994 the court vacated its previous order staying the proceedings.

As I have already noted, neither party has demonstrated an entitlement to summary judgment. However, for reasons that follow, I also conclude that there is an overriding issue in this case, i.e., the effect of the ICC's failure to rule on the issue of rate reasonableness, that would preclude summary judgment on either the complaint or the counterclaim, even if entitlement to summary judg-

ment had otherwise been established. To place this issue in its proper framework, it is necessary first to discuss the effect on this proceeding of two recent developments in the law governing interstate motor common carriers: the Negotiated Rates Act and the Supreme Court's *Reiter* decision.

### III. The Negotiated Rates Act

By enacting the Negotiated Rates Act in 1993, Congress clearly intended to provide a new framework for the resolution of cases such as this one. As noted in the legislative history of the measure, following deregulation of motor common carrier rates in 1980, it became common practice for carriers and shippers to negotiate individual rates for particular transportation services. H.R.Rep. No. 103–359, 103rd Cong., 1st Sess. 8, reprinted in 1993 U.S.C.C.A.N. 2534, 2535; *see also Reiter,* —— U.S. at —— – ——, 113 S.Ct. at 1215–17, 122 L.Ed.2d at 612–13 (noting that these negotiated rates are typically less than the tariff rates that the carrier is required to publish and file with the ICC). If the motor carrier ceases operations and seeks bankruptcy protection, the trustee in bankruptcy frequently retains an auditor to search the records of the carrier for instances where the collected rate was lower than the published rate, and then files a collection action to recover the difference. H.R.Rep. No. 103–359 at 8; *see also Reiter* at —— – ——, 113 S.Ct. at 1216–17, 122 L.Ed.2d at 613. The ICC in early policy statements found that such collection practices were unreasonable. H.R.Rep. No. 103–359 at 8. However, in *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Supreme Court held that it was inconsistent with the Interstate Commerce Act for the ICC to make such a determination.

▉ The Negotiated Rates Act is a direct response to the *Maislin* decision. Congress noted that *Maislin* did not preclude a shipper from contending that the tariff rates themselves were unreasonable, as distinct from the reasonableness of the collection efforts; the Act preserves this option. *See* H.R.Report No. 103–180 at 10. Additionally, with respect to transportation transactions

that took place prior to September 30, 1990, the Act declares that "it shall be an unreasonable practice" for a motor common carrier to attempt to collect the difference between an applicable published tariff rate and the negotiated rate, if the carrier is no longer transporting property. Negotiated Rates Act of 1990, § 2(e)(1). The Act vested the ICC with the authority to make the factual determination of whether such an unreasonable practice had taken place in a given case. *Id.* at (e)(2). The Act further provides that shippers may elect to avail themselves of certain settlement procedures when additional charges are sought by the carrier, provided that the enumerated conditions are met. *Id.* at § 2, codified as 49 U.S.C. § 10701(f).

The Negotiated Rates Act became law on December 3, 1993, subsequent to the filing of the complaint in this action. However, the Act is applicable to this case. The settlement provisions apply to all claims pending as of the date of the Act. Negotiated Rates Act of 1990, § 2(c). As to the "unreasonable practice" provisions, Congress intended to resurrect the unreasonable practice defense for claims that involve transportation services provided before the *Maislin* decision. *See* H.R.Report No. 103–359 at 10. The transportation services at issue were all provided in 1988 and 1989. *See* Exh. A to Complaint; Exhs. B–1 to B–343 to Shinn Affidavit.

Nowhere in its answer, counterclaim or summary judgment motion does the defendant seek to avail itself of either of the two mechanisms created by the Act. In particular, I note that the defendant does not allege that the plaintiff's effort to collect undercharges amounts to an unreasonable practice. Further, upon passage of the Act the ICC reopened its administrative record in this proceeding to permit the parties to submit evidence on the question of whether the plaintiff's collection efforts are an unreasonable practice. *See* ICC Order II. Inexplicably, the first party to discuss the Negotiated Rates Act is not the defendant but the plaintiff, who contends in the memorandum of law submitted with his summary judgment motion that the Act does not apply to a carrier

that is a debtor in bankruptcy. The defendant responds by making two contradictory assertions in the same responsive memorandum, first reminding the court that "nowhere has there been any reference to the Negotiated Rates Act in this case," and then, 27 pages later, citing the language in the Act governing the statute's temporal application to argue that "clearly the Act is applicable," although neglecting to indicate how or whether or to what extent it means to invoke the Act. Defendant, G.H. Bass & Co.'s Brief in Opposition to Plaintiff's Motion for Summary Judgment and Brief in Support of Defendant's Motion For Summary Judgment ("Defendant's Memorandum") (Docket No. 26) at 9, 36. Several courts have squarely rejected the notion that a debtor in bankruptcy is not subject to the relief afforded by the Negotiated Rates Act, one holding that it would be "absurd" to conclude that Congress intended the Act to apply only to carriers that are no longer transporting property but have not filed for bankruptcy protection. *Jones Truck Lines, Inc. v. Grinnell Corp.,* 167 B.R. 488 (N.D.Ill.1994); *see also Allen v. Spiegel, Inc.,* 169 B.R. 394, 396–97 (N.D.Ill. 1994); *Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296, 1299 (E.D.Ark. 1994) (application of Negotiated Rates Act to bankrupt carriers is the "basic reason" for the Act); *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691, 693 (W.D.Ark. 1994). In the circumstances of the present case, the prudent course is to simply note that there have been no affirmative steps taken to invoke the remedies afforded by the Act.

## IV. *Reiter v. Cooper*

The Supreme Court's *Reiter* decision, announced shortly before the plaintiff filed his complaint in this case, also forms a significant part of the backdrop of these proceedings. *Reiter* stands for the proposition that when a shipper defends against a suit such as this one by contending that the carrier's published tariff rates were unreasonable, such a defense must be treated as a counterclaim. *Reiter,* —— U.S. at —— – ——, 113 S.Ct. at 1217–18, 122 L.Ed.2d at 614; *see also Security Services, Inc. v. K Mart Corp.,* —— U.S. ——, ——, 114 S.Ct. 1702, 1705–06,

128 L.Ed.2d 433, 439 (1994) (noting that, pursuant to *Maislin*, *Reiter* and the so-called "filed rate" doctrine, a shipper may not assert equitable defenses when a carrier claims undercharges pursuant to a filed rate). In *Reiter*, unlike the instant case, the shipper had mistakenly raised the unreasonable rate argument in the form of a defense rather than a counterclaim, but the Court held that the error should not be outcome-determinative. *Reiter*, —— U.S. at ——, 113 S.Ct. at 1217–18, 122 L.Ed.2d at 614. More significant, for purposes of the instant case, is what the *Reiter* court went on to say:

> One major consequence does attach to the fact that an unreasonable-rate claim is technically a counterclaim rather than a defense: A defense cannot possibly be adjudicated separately from the plaintiff's claim to which it applies; a counterclaim can be. Federal Rule of Civil Procedure 54(b) permits a district court to enter separate final judgment on any claim or counterclaim, after making "an express determination that there is no just reason for delay."

*Id.* at ——, 113 S.Ct. at 1218, 122 L.Ed.2d at 615 (citations omitted).

Relying on *Reiter*, the plaintiff urges the court to advance its claim for undercharges to final judgment even if the defendant's counterclaim alleging unreasonable rates remains unresolved. But *Reiter* itself counsels otherwise:

> In the ordinary case, where a carrier is solvent and has promptly initiated suit, the equities favor separate judgment on the principal claim: referral of the unreasonable-rate issue could produce substantial delay, and tariff rates not disapproved by the ICC are legal rates, binding on both the shipper and the carrier. The equities change, however, when the suing carrier is in bankruptcy. Indeed, we have previously held that even a "threat of insolvency" of the party seeking separate judgment is a factor weighing against it.

*Id.* at ——, 113 S.Ct. at 1221, 122 L.Ed.2d at 619 (quoting *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 12, 100 S.Ct. 1460, 1467, 64 L.Ed.2d 1 (1980); other citations omitted).

As I have previously discussed, *see* note 2, *supra*, in my view each party's failure to set forth the material facts that are not in dispute precludes any conclusion that the present record entitles either party to a judgment as a matter of law. But even if the plaintiff had demonstrated an entitlement to summary judgment on his complaint, I would not advance his claim to final judgment. Although insolvency is not an "absolute bar" to the entry of a separate judgment on the complaint pursuant to Rule 54, *Reiter*, —— U.S. at ——, 113 S.Ct. at 1221, 122 L.Ed.2d at 619, the combination of insolvency and the plaintiff's intransigent posture before the ICC, discussed *infra*, is impossible to ignore in the court's exercise of its discretion. With respect to the plaintiff's claim for undercharges, I would not make the required express determination that there is no just reason for delay.

## V. Effect of the ICC Proceedings

Each of the parties contends that the ICC's dismissal of the defendant's petition compels judgment in its favor on the defendant's counterclaim. The defendant, relying on the statement in the ICC's decision that the plaintiff's claimed undercharges "have not been justified," also contends that the dismissal of the administrative proceeding compels judgment in its favor on the plaintiff's original complaint. For the reasons discussed below, I believe it would do violence to the doctrine of primary jurisdiction for this court to assign any dispositive effect to the ICC ruling at this stage of the proceedings.

The plaintiff contends that the defendant failed to sustain its burden of proof before the ICC on the question of whether TSC's rates were unreasonable and that, therefore, the court should determine for purposes of the plaintiff's summary judgment motion that TSC's rates were reasonable. In support of this contention, the plaintiff cites the Supreme Court's recent decision in *Director, Office of Workers' Compensation Programs, Dept. of Labor v. Greenwich Collieries*, —— U.S. ——, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). At issue in *Greenwich Collieries* was section 7(c) of the Administrative Procedure Act (APA), which states that, "[e]xcept as

otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). The Court determined that the phrase "burden of proof" in section 7(c) refers to the burden of persuasion, as distinct from what has been variously described as the burden of production or the burden of going forward with the evidence. *Greenwich Collieries,* —— U.S. at ——, 114 S.Ct. at 2255–57, 129 L.Ed.2d at 229–30. Accordingly, the Court invalidated the Department of Labor's "true doubt" rule, which ran afoul of section 7(c) by awarding certain employment benefits to claimants when the evidence as to the entitlement to those benefits is evenly balanced. *Id.* at ——, 114 S.Ct. at 2259, 129 L.Ed.2d at 233.

*Greenwich Collieries* is inapplicable to the instant case. As *Reiter* makes clear, because the Interstate Commerce Act requires carriers' rates to be "reasonable," and gives shippers an express cause of action against carriers for the difference between the tariff rate and the rate determined by the ICC to be reasonable, a defendant in a case such as this one may assert this cause of action as a counterclaim. *Reiter,* —— U.S. at ——–——, 113 S.Ct. at 1217–18, 122 L.Ed.2d at 614. Further, because determinations as to the reasonableness of carriers' rates are within the special competence of the ICC, the doctrine of primary jurisdiction requires the court to enable a referral to the ICC, staying further proceedings so as to give the parties a reasonable opportunity to seek an administrative ruling on the issue of rate reasonableness. *Id.* at ——–——, 113 S.Ct. at 1219–20, 122 L.Ed.2d at 617; *see also Delta Traffic,* 902 F.2d at 103–04. Thus, there is no question that the defendant, in asserting its counterclaim and in presenting the issue of rate reasonableness to the ICC for determination, must carry the burden of persuasion both at the agency level and before this court.

The issue here is not whether the defendant has carried its burden before the agency; neither party challenges the substance of the ICC's ruling or the sufficiency of the evidence to support it. Rather, this dispute centers on the effect to be given the ICC's dismissal of the defendant's petition.

Resolution of the dispute requires thoughtful consideration of the rationale underlying the primary jurisdiction doctrine. The Supreme Court's discussion of this in *Reiter* is a very limited one, designed merely to correct the respondent's mistaken contention that the doctrine required the petitioners to present their claims to the ICC before filing their complaint with the trial court. *See Reiter,* —— U.S. at ——–——, 113 S.Ct. at 1219–21, 122 L.Ed.2d at 617–18. More helpful is the discussion in *Delta Traffic,* in which the Court of Appeals for the First Circuit noted that the doctrine of primary jurisdiction requires a court to suspend its process and refer a matter to an administrative agency whenever enforcement of a judicial claim "*requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [that] administrative body.*" *Delta Traffic,* 902 F.2d at 103, (*quoting United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)) (emphasis added). Courts should await an ICC determination as to the reasonableness of a carrier's rates because

> the ICC, an expert and experienced body, [is] better equipped to answer such questions; Congress wanted the ICC to answer questions of this sort; and to permit *courts* to answer these questions independently would threaten the nationwide uniformity of rate that the Interstate Commerce Act sought.

*Id.* at 104 (citations omitted, emphasis in original). In other words, the doctrine of primary jurisdiction "exists for the proper distribution of power between the judicial and administrative bodies *and not for the convenience of the parties.*" *Fontan-de-Maldonado v. Lineas Aereas Costarricenses, S.A.,* 936 F.2d 630, 632 (1st Cir.1991) (quoting *Distrigas of Mass. Corp. v. Boston Gas Corp.,* 693 F.2d 1113, 1117–19 (1st Cir.1982)) (emphasis added).

However, "the doctrine of primary jurisdiction is not a doctrine of futility." *Skaw v. United States,* 740 F.2d 932, 938 (Fed.Cir.1984) (quoting *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen v. Jewel Tea Co.,* 381 U.S. 676, 686,

85 S.Ct. 1596, 1600, 14 L.Ed.2d 640 (1965)). Thus, in *Skaw,* the Court of Appeals for the Federal Circuit found it unnecessary for the trial court to refer questions as to the validity and location of certain mining claims to the Department of the Interior, because "[w]e do not think that the doctrine of primary jurisdiction requires a court to refer a question to an agency where, as here, the agency has declined to decide the precise question on a prior reference by the court." *Skaw,* 740 F.2d at 938. Were this a case in which the ICC itself refused to answer a question duly posed by the parties, with the authority of the court, I would conclude that the commission's dismissal satisfies the requirements of the doctrine. However, as the ICC's decision makes clear, and as the parties appear to agree, the ICC is willing to decide the issue, and it is one or both of the litigants that bear responsibility for the agency's failure to reach the merits of the dispute on the initial reference.

 *Reiter* and *Delta Traffic* teach that application of the doctrine of primary jurisdiction is not discretionary; when a question presented for decision is one that is within the special competence of the administrative agency, and where Congress has endorsed the notion that the question be answered in a consistent manner, the court is *required* to stay the proceedings "so as to give the parties a reasonable opportunity to seek an administrative ruling." *Reiter,* —— U.S. at ——, 113 S.Ct. at 1220, 122 L.Ed.2d at 617. Unresolved is the extent to which the court may exercise discretion when the question remains unanswered and it appears that the reasonable opportunity described in *Reiter* may have run. In my view, the result here is the same whether the decision is a discretionary one or not. Either the court lacks discretion, and the doctrine of primary jurisdiction requires the court to reimpose a stay and await a determination of the matter dismissed by the ICC without prejudice, or the equities presented by this case weigh in favor of the court exercising its discretion by requiring further proceedings before the ICC before either the plaintiff's claim or the de-

fendant's counterclaim may advance to final judgment.

In *Rohr Indus., Inc. v. Washington Metro. Area Transit Auth.,* 720 F.2d 1319 (D.C.Cir. 1983), the Court of Appeals for the District of Columbia Circuit refused to apply the doctrine of primary jurisdiction to a contract dispute involving an administrative agency, noting that the trial court must "examine whether delay of its own proceedings will have any impact on the alleged harm sought to be presented to the trial court. When the charge is obstructionism, courts must be wary of the possibility of rewarding the very impropriety alleged." *Id.* at 1327. The instant case differs from *Rohr,* where the question was one of discretion whether to invoke the doctrine of primary jurisdiction in the first instance. But, if the peculiar procedural posture of the present proceeding requires the court to exercise its discretion, this case certainly calls for application of the principle articulated in *Rohr* that courts should be very careful not to reward obstructionists who would further the cause of obstruction by alleging obstructionism.

Indeed, the record reflects the emphatic trading of charges between the parties as to who is responsible for impeding the progress of this litigation. The plaintiff contends that the defendant has gained a time delay of one year by successfully urging a referral to the ICC and then complaining that the plaintiff failed to provide information to the defendant that the defendant already possessed as a result of discovery that preceded the referral. The defendant contends that it is the plaintiff that refused to participate in the ICC proceeding, and in so doing has made a "total mockery" of the order of referral. Defendant's Memorandum at 16.

In my opinion, it is neither necessary nor appropriate for the court to peer into the record of what transpired before the ICC and determine on its own which party bears responsibility for the dismissal. If matters such as this are referred to the ICC because Congress has vested in that agency the expertise and authority to make uniform determinations as to the reasonableness of carriers' rates, then it follows that the ICC also has the expertise to determine what specific

information is necessary to make such a determination, what the proper source of that information is, and in what format that information should be inserted into the administrative record. It is possible to infer from the ICC's observation that the plaintiff has not justified its asserted undercharges that the agency holds the plaintiff responsible for the breakdown of the adjudicative process reflected in the ICC proceedings to date. However, I believe the better approach is to look no further than the ICC's decision to dismiss the petition without prejudice. The ICC's modified procedures specifically allow the commission to default a party who fails to comply with any requirement set forth in an order subjecting a proceeding to the modified procedures. *See* 49 C.F.R. § 1112.3. Thereafter, the commission may dispose of the proceeding without notice to or the participation of the party in default. *Id.* For whatever reason, the ICC opted not to default either party, from which I can only infer that the agency believed that neither party should benefit from (or be adversely affected by) the agency's inability to determine the reasonableness of TSC's rates. The ICC has failed to arrive at a "definitive position" on the issue before it, which means the decision would lack finality if the question before the court involved exhaustion of administrative remedies. *Darby v. Cisneros,* —— U.S. —— – ——, 113 S.Ct. 2539, 2543, 125 L.Ed.2d 113, 121 (1993) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985)). Exhaustion doctrine does not apply here because the ICC properly regards itself as without independent authority to grant reparations relief, *Reiter,* —— U.S. at —— – ——, 113 S.Ct. at 1220–21, 122 L.Ed.2d at 618, but the concept of finality offers a useful analogy. I therefore cannot agree with the plaintiff that he is entitled to judgment on the defendant's counterclaim in light of the ICC's dismissal of the defendant's petition without prejudice.

For the same reasons, I cannot agree with the defendant that the ICC's decision should have the effect of requiring judgment in the defendant's favor on both the complaint and the counterclaim. Neither can I agree that the record supports a determination by this court that the plaintiff's failure to submit information to the defendant pursuant to the ICC's procedural order amounts to an "indirect contempt" that should have either a substantive or procedural effect on the proceedings here. *See* Defendant's Memorandum at 16. In support of its contentions, the defendant refers to the statement in the ICC's decision that "the undercharges sought by TSC have not been justified." *See* ICC Order III. That, however, was not the issue that prompted the stay and referral to the ICC. What *Reiter* definitively clarified is that in a proceeding such as this one, the issue of rate reasonableness is treated as a counterclaim and, thus, has no direct bearing on whether a plaintiff-carrier may recover the difference between its published tariffs and the rates actually paid by the shipper. *See Reiter,* —— U.S. at —— – ——, 113 S.Ct. at 1217–18, 122 L.Ed.2d at 614–15. Therefore, the ICC's advice to the court on the merits of the plaintiff's claim should have no effect on the proceedings.

## VI. Further Proceedings

Although the court has lifted the stay imposed on these proceedings designed to facilitate referral to the ICC, there is no procedural order in effect to govern the future course of the proceedings. Neither party offers the court any guidance as to how this action should proceed in the event that neither summary judgment motion is granted. Since these litigants have demonstrated that they are, at best, unable to act in a manner calculated to allow the referral process to work properly, the court must act affirmatively to assure that this case progresses toward final judgment.

A logical corollary to the doctrine of primary jurisdiction, requiring that the court enable a referral to the ICC so it may rule on the question of rate reasonableness, is the notion that the court should do all that is necessary, consistent with the law and common sense, to enable the agency to reach a decision on the merits of the issue before it. While the previous stay ordered by the court was designed to enable an ICC referral, the

parties have seemingly done all they can to *disable* the referral process. Nor have the parties seen fit to abandon their mutual postures of intransigence now that this proceeding is once again before the court. The plaintiff devotes considerable space in his memorandum to his contention that equity requires judgment in his favor because the ICC has changed its position on undercharges many times since 1985 in an effort to conduct an "end run around the courts with perverse interpretations of court decisions." Plaintiff's Memorandum at 9–11. The defendant, seizing upon a typographical error apparently made in some copies of the plaintiff's brief, misidentifying the name of the plaintiff, counters with the allegation that the plaintiff's submission of a "canned brief" merits denial of the plaintiff's summary judgment motion and the imposition of sanctions pursuant to Fed.R.Civ.P. 11. *See* Defendant's Memorandum at 7–13.

While I find no violation of the good faith requirement set forth in Rule 11, I am concerned that in the absence of a firm judicial hand these parties may never progress beyond insouciant bickering. The doctrine of primary jurisdiction was not intended to give rise to a class of "circumforaneous litigants" who bounce haplessly, or in this case contentiously, from forum to forum. *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 158–59 (1st Cir.1989) (quoting *Maine v. Thomas*, 874 F.2d 883, 884–85 (1st Cir.1989)). Moreover, "[a]gency expertise, even if late in coming" is still "crucial" to the evaluation of the issues within the agency's primary jurisdiction. *New England Legal Found.*, 883 F.2d at 173. I therefore recommend that the cross-motions for summary judgment be **DENIED**; that the proceedings once again be **STAYED**; and that (i) the matter be referred a second time to the Interstate Commerce Commission for a determination of the reasonableness of the filed rates of TSC Express Company; (ii) the parties be ordered to comply fully with ICC procedures and avail themselves of all available mechanisms (including, *inter alia*, a mo-

tion to compel production of documents ordered to be furnished by the plaintiff to the defendant) to insure that the ICC decides the rate reasonableness issue on the merits; (iii) the parties be placed on notice that the court will lift the stay and entertain an appropriate dispositive motion during the pendency of the ICC proceedings in the event that the ICC certifies that an identified party has failed to comply fully with any of its procedural orders, including orders regarding the submission of documents or other information to the commission and/or the opposing party; and, (iv) the ICC be requested, should it again dismiss the proceedings before it in the absence of an adequate record, to make a specific finding as to which party failed to comply with its procedures.[5]

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

*Dated at Portland, Maine this 21st day of November, 1994.*

/s/ David M. Cohen
 *David M. Cohen*
 *United States Magistrate Judge*

---

5. Because I have recommended the denial of the parties' summary judgment motions, it is not necessary to deal with the plaintiff's contention that he is entitled to collect prejudgment interest.

The remaining contention is the one made by the defendant that he was denied due process of law as a result of being compelled to comply with the requirement in Local Rule 19(c) that he object to the plaintiff's summary judgment motion within ten days of its filing. I note that Local Rule 19(c) allows for three extra days to cover service of the motion by mail. The plaintiff's contention is without merit.